## 29960. STAMPER v. THE STATE.

JORDAN, Justice.

Robert Lansing Stamper, Jr., was indicted for the murder of Greta Gay Block, also known as Greta Worrell, by striking her with a blunt instrument unknown to the grand jury. He was convicted and sentenced to life imprisonment. He appeals from the denial of his motion for new trial, as amended.

The child was three years old. Her death occurred on August 21, 1974, at 5 p.m. at Grady Hospital in Atlanta.

On August 19, 1974, at about 10 p.m. an emergency unit from the DeKalb County Fire Department responded to a call and found a nude child (the deceased) lying on the foot of a bed with a man (the appellant) giving mouth-to-mouth resuscitation to the child. They took the child to DeKalb General Hospital, and later moved her to Grady Hospital.

Officer Conger, with the DeKalb County Police Department, testified that: He responded to a call that a person had been injured and was not breathing. When he arrived at the address given he found three members of

the Emergency Medical Service there. He saw them carry a young child from the house. He talked with the appellant who told him that: between 9 and 9:15 p.m. he turned on the television to watch a football game; the young girl had gone back to take a bath, and he did not think anything of it; he heard a thud and went back to check and found her lying down in the tub; he picked her up and water and saliva were coming out of her mouth; he put her on his shoulder and ran out of the house up the road to get help, then thought it would be quicker if he called, so he ran back to the house. The appellant appeared to be upset.

Dr. Gary Kaplan, a resident in neurology at Grady Hospital, testified that: He examined the child and found that she had retinal hemorrhages and was unconscious. His findings were consistent with increased innercranial pressure. He could not with certainty say that her symptoms did not indicate drowning, but drowning would be low on his list of suspicions. His feelings about drowning in the case were pertinent to the fact that the child was three years old, and would not likely drown in a bathtub unless she was previously unconscious. If she was conscious when she went into the tub, the chances of the child drowning were about 95% not possible.

Dr. Joseph Lawson Burton, who performed an autopsy on the child's body, testified that: The autopsy revealed that the child had received three blows to the top back of the head, resulting in a hematoma, or clots, surrounding the brain, and had received a severe blow to the abdomen, resulting in hemorrhaging within the abdomen. The blows had been made by a blunt object, or an object that did not break the skin. They were consistent with being inflicted by a human fist. They were not consistent with the theory of accidental cause. It was his opinion that they could not have been caused by a fall in the bathtub. It was his opinion that the head and abdominal wounds were made between 24 and 72 hours prior to death. It was his opinion that the cause of death was subdural hematoma, or hemorrhaging within the head, as a result of the injuries to the head. There were no visible injuries to the head. When the blows were inflicted, the child could have become unconscious

immediately and never regained consciousness, or she could have gone into a coma at a later date than when the injuries were inflicted, and it is possible that she could have become unconscious while in the bathtub.

Mr. and Mrs. Fred Pearson, and their daughter Donna, age 16, testified that the child stayed in their home on August 10 and 11, 1974. Mrs. Pearson was a business associate of the appellant. She testified that: The appellant had the child with him at the office on August 10. He told her that the child's mother had asked him to check on the child, and he found she had bruises on her and he took her home with him. The child expressed the wish to go home with her, and she took her. When the appellant came to get the child, she did not want to go with him, and asked him, "Are you going to hurt me?" To which the appellant replied, "Honey, I wouldn't hurt you in a million years," and kissed her.

Mr. Fred Pearson testified that: The child was upset and had been mistreated. She had numerous bruises on her body. When the appellant came into the house, the child exhibited fear, and asked him if he was going to whip, or spank, or something like that.

Donna Pearson testified that: The child had numerous bruises on her body. She asked the child how she got the bruises, and the child said it was her daddy. She asked her who her daddy was, and the child said it was Bob Stamper (the appellant).

Mr. and Mrs. Thomas Wayne Burke testified that the child stayed in their home from the afternoon of August 11, until about 8:20 a.m. on August 19, 1974. Mr. Burke testified that: The child had bruises almost all over her body, and they had Dr. Quattlebaum examine her. The child appeared to be terrified when the appellant came to pick her up. She cried and held on to the witness. The child complained of having stomach pains once or twice while she was there.

Mrs. Burke, a business associate of the appellant, testified that: She first saw the child when she went to her office on Sunday afternoon, August 11, 1974. The child wanted to come home with her, and the appellant seemed pleased with the idea. The child was bruised from head to toe, and she had Dr. Quattlebaum come to her house

Wednesday night to examine her. The child was nervous every time the appellant's name was mentioned. She did not want to go with him when he came after her. She asked the child on two occasions where she got the bruises. The first time, the child told her that everybody did it. The second time, she said that Bob Stamper (the appellant) did it. (The testimony in regard to these statements of the child was objected to on the ground that they were hearsay).

Dr. Quattlebaum, a pediatrician, testified that he saw the child during the evening of August 14, 1974. She had multiple bruises on her body. It was his opinion that she was an abused or battered child. The bruises appeared to have been from three or four days to a week old. His examination did not indicate that the child had received any head injury. He called the appellant and talked with him about the child, and told him that the Protective Services, to whom he had reported the case, had suggested that the child be placed in temporary protective custody. The appellant emphatically rejected this suggestion, but seemed concerned about the child and wanted to know if he thought the child should be taken away from the mother and placed for adoption.

Sandra Worrell, the mother of the deceased child, testified that: Her occupation was that of a dancer in nightclubs. She met the appellant at a bar at 10th Street in Atlanta. She and her two children lived with him for a year. He was not the father of the children. She left Atlanta to go to Boston on July 21, 1974, and took her children with her. She sent them back to Atlanta on August 9, 1974, by plane, to the appellant. The appellant paid the plane fare. Several times her daughter (the deceased child) asked her if "Daddy" was going to kill her. The last time the child asked was the last time she saw her.

1. Error is enumerated on the admission in evidence, over objection that it was hearsay, of the testimony of Mrs. Burke that the child said the appellant had beaten her.

It is argued by the state that if there was error in admitting this testimony, it was harmless error because similar statements of the child were admitted without objection.

Code Ann. § 38-1713 (Ga. L. 1971, p. 460) provides: "If, on direct examination of a witness, objection is made to the admissibility of evidence, neither cross-examination of the witness on the same subject-matter nor the introduction of evidence on the same subject-matter shall constitute a waiver of the objection made on direct examination."

In *Robinson v. State,* 229 Ga. 14, 16 (189 SE2d 53) (with one Justice dissenting), this court held that the above quoted Code section did not deal with harmless error which results from legally admissible evidence rendering harmless the admission of incompetent or inadmissible evidence of the same fact. In the present case there was no evidence of the fact stated by the child except other similar statements of the child. If the testimony objected to was inadmissible, so were the other statements of the child related by other witnesses. Hearsay testimony, even though admitted without objection, has no probative value. *Dowling v. Doyle,* 149 Ga. 727, 731 (102 SE 27); *Higgins v. Trentham,* 186 Ga. 264 (1) (197 SE 862); *Poole v. Duncan,* 202 Ga. 255, 258 (42 SE2d 731); *Duke v. State,* 205 Ga. 106, 110 (52 SE2d 455).

The testimony was not harmless because of the admission of other legal evidence, unless the statements come under some exception to the hearsay rule.

The state contends that the statements of the child to Mrs. Burke were admissible under Code § 38-302, which provides: "When, in a legal investigation, information, conversations, letters and replies, and similar evidence are facts to explain conduct and ascertain motives, they shall be admitted in evidence, not as hearsay, but as original evidence." It is argued that the child's statements concerning people beating her, combined with the bruises on her body, explained the conduct of this witness in obtaining a doctor to examine the child.

The statement of the child naming the appellant as the one who had beaten her was entirely unnecessary to explain the conduct of the witness in having the child examined by a physician. The state did not purport to introduce it for this purpose.

The statements of the child did not accompany any act which would make them admissible as part of the res

gestae. Code § 38-305. "The mere fact that the declarant was a child of tender years cannot be said, standing alone, to free the statements from the suspicion of device or afterthought." *Hight v. Butler,* 230 Ga. 533 (3) (198 SE2d 169).

The statements of this child to the witness were hearsay, and not admissible on the trial. Compare *Woolfolk v. State,* 81 Ga. 551 (3) (8 SE 724); *Tiget v. State,* 110 Ga. 244 (1) (34 SE 1023).

The statements by the child were highly prejudicial to the appellant, and it was harmful error to admit these hearsay statements.

2. The evidence was sufficient to support the verdict, and it was not error to overrule the general grounds of the motion for new trial, or to refuse to direct a verdict of acquittal.

3. The errors enumerated with reference to the charge of the court on circumstantial evidence, and the failure to give additional instructions on this subject, are without merit.

4. In view of the return of the case for a new trial, it is unnecessary to consider whether error was committed in denying the appellant's extraordinary motion for new trial.

*Judgment reversed. All the Justices concur, except Undercofler, P. J., who concurs specially.*

Argued June 11, 1975 — Decided September 16, 1975.

*Charles L. Weltner,* for appellant.

*Calvin Leipold, Edward H. Kellogg, Assistant District Attorneys, Arthur K. Bolton, Attorney General, John W. Dunsmore, Jr., Staff Assistant Attorney General,* for appellee.