## 31874. BLAKE v. THE STATE.

HILL, Justice.

This is a death case. Appellant Joseph James Blake was indicted by a Chatham County grand jury on January 15, 1976, for the November 15, 1975, murder of Tiffany Loury, age two. He was tried by a jury on February 13 and 14, 1976, and convicted. The jury found aggravating circumstances and recommended the death penalty. The case is before this court on appeal of denial of a motion for

new trial and for mandatory review of the death penalty.

Evidence was presented from which the jury was authorized to find the following: In November, 1975, Jacquelyn Loury and her two-year-old daughter Tiffany, the victim, were living with her mother, Florence Smith, and Jacquelyn's brothers and sisters. Jacquelyn and the defendant had dated each other for about nine months and planned to be married.

On the evening of November 14, 1975, the defendant asked Jacquelyn to go out with him but she told him that she planned to go out with her girlfriend, Denise Walker. The defendant persisted in asking Jacquelyn to go out with him instead. Jacquelyn went to Denise Walker's house where the defendant showed up and again asked if she was going out and whether he could take her somewhere. She told him that she wanted him to take her to the Silver Fox Lounge. Jacquelyn's mother kept Tiffany while Jacquelyn, the defendant, Denise Walker, and three others went first to one bar and then to another. They were drinking beer and the defendant was drinking vodka.

During the course of the evening the defendant told Jacquelyn he was ready to leave, an altercation occurred between them, and the defendant struck Jacquelyn on the side of the head with his fist. The lounge management ejected the defendant and when he returned he was ejected a second time around midnight.

Florence Smith testified that Tiffany and the other children had gone to bed shortly after 9:30 p.m. on November 14. Mrs. Smith left the house to visit friends at approximately 10:15, returning at about 12:15. She noticed that the window was up in the room in which Tiffany had been sleeping, and that the curtains were pulled back. At approximately 1 o'clock, the telephone rang and Mrs. Smith identified the voice of the defendant. He asked whether Jacquelyn was home and when told that she was not, the defendant told Mrs. Smith that he had Tiffany. She scolded the defendant for having the baby out in the cold at that time of night, but he hung up.

Police Officer C. E. Williams responded to a homicide call in the vicinity of the Eugene Talmadge Memorial Bridge. There he talked to the defendant who told him

that he had just thrown a girl named Tiffany off the bridge, which is more than 100 feet high. The officer advised the defendant of his rights and began questioning him. The defendant described the events which had occurred and later gave a complete confession.

The pathologist who performed an autopsy on the child testified that the cause of death was drowning and noted that the victim had severe injuries which were consistent with injuries sustained as a result of a fall from an extreme height.

The defendant testified, admitting that he had in fact thrown the child from the bridge causing her death, but contending that he was insane. He testified that after having been put out of the bar the second time, he rode around for awhile and then went to Jacquelyn's home. When no one answered his knocking, he opened a window, reached inside and unlocked the door. On entering the house, he found everyone asleep, except Tiffany. The defendant testified that he asked Tiffany if she wanted to go with him and she said yes. They left by way of the back door.

The defendant testified that he intended to run away with the child because the mother did not deserve to have her. He admitted making the phone call for the purpose of telling Jacquelyn that she would never see him or her daughter again. He said that following the phone call he drove around until he came to the Eugene Talmadge Memorial Bridge. He drove over the bridge to South Carolina but decided to turn around and return to Savannah. The defendant testified that about halfway back across the bridge he asked the child, "Would you like to go and stay with me forever?" She replied, "Yes." The defendant replied, "OK. That's what we'll do. Nobody won't bother us again." He stopped the car.

The defendant and the child got out of the car and knelt down and prayed about going into another world. Then the defendant told the child, "I'll send you first and I'll be along shortly after." The defendant explained that the reason he was "going later" was because he wanted the child's mother to know they were leaving and why he was taking the baby with him.

The Director of the Forensic Psychiatric Center at

Central State Hospital in Milledgeville, Georgia, testified that the defendant was admitted to that hospital on December 3, 1975, pursuant to court order for an examination and evaluation of his medical condition and his mental capacity to face charges of murder and kidnapping. The examination revealed that the defendant was in good physical health. His mental condition was determined to be "reactive-depressive." It was determined during his psychiatric examination that the defendant was not insane. The doctor stated that the defendant had no history of psychiatric problems.

The defendant has urged five enumerations of error.

1. In his first enumeration he urges that the trial court erred by permitting testimony during the guilt-innocence phase of the trial of a prior criminal act when the defendant's character was not in issue and when the only issue was his sanity at the time of the crime.

The prior criminal act objected to was related by defendant's former wife. She described an incident after they separated in which the defendant came to her house to talk to her about the two of them getting back together. Mrs. Blake testified that they had been talking and she had sent her sister to get the mail. When she came back from the screen door, the defendant was holding her two-year-old son and he said, "I bet you will come back to me if I run this knife through his heart." She grabbed her child away from the defendant.

Evidence which is material and competent is not to be excluded merely because it is prejudicial. *Fowler v. State,* 111 Ga. App. 856 (143 SE2d 553) (1965). Mrs. Blake's testimony was both material and competent to show the state of mind, plan and motive of the defendant. It tended to rebut his claim of insanity by showing a course of conduct in threatening harm to small children as a way of imposing his will on their mothers, as contrasted to an act carried out while insane. Testimony relating to other crimes is admissible if such testimony aids in identification or shows the state of mind, plan, motive or scheme of the accused. *Davis v. State,* 233 Ga. 638, 639 (2) (212 SE2d 814) (1974); *McNeal v. State,* 228 Ga. 633 (187 SE2d 271) (1972); *Atkins v. State,* 236 Ga. 624, 625 (225 SE2d 7) (1976); *Moore v. State,* 221 Ga. 636, 637 (146 SE2d

895) (1966); *Cawthon v. State,* 119 Ga. 395 (46 SE 897) (1904). The trial court limited testimony concerning the incident to that portion involving the child (the court prohibited the district attorney from bringing out during the guilt-innocence phase that the defendant stabbed Mrs. Blake after she grabbed her son). The trial court did not err in admitting the testimony.

2. In Enumeration 2 the defendant alleges that the trial court erred by sentencing him to death in that the evidence does not support the jury's finding of aggravating circumstances ("outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim") and that the verdict is contrary to law in that it was imposed "under the influence of passion, prejudice or any other arbitrary factor." Code Ann. § 27-2537 (c) (1).

In support of this enumeration, the defendant urges that the "record wholly fails to show any torture and/or other aggravated battery to the victim. Nothing supports a finding that defendant wanted to harm Tiffany Loury in the early morning of November 15, 1975. There is no proof of suffering on the part of the victim or an intent to kill on the part of Blake." The defendant further asserts that the age of the victim automatically triggered natural prejudices which were enhanced by the testimony of his former wife concerning threats to her child and his stabbing her while she was seven months pregnant.

In addressing Enumeration 1 we have held that the court did not err in admitting during the guilt-innocence phase of the trial the testimony of the former wife concerning defendant's threat to her child. The court did not err in admitting during the sentencing phase the testimony of the former wife that after she rescued her son from the defendant he stabbed her several times and that she was pregnant at the time. The defendant had been given notice that these charges would be used against him in aggravation.

The age of the child was not prejudicial in and of itself. If the fact that a two-year-old girl was the victim of an outrageous crime evoked sympathy, that was unavoidable. The defendant dropped this two-year-old child from a bridge at a point where the evidence shows it

is in excess of 100 feet above the water. The pathologist testified that the body showed that it had received severe mechanical trauma in general and damage to the internal organs.

The evidence supports the jury's finding that the murder was "outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim." There is evidence of intent to kill. The defendant testified that he was sending the child to another world. Although there may be no direct evidence of suffering by the victim, the circumstances amply demonstrate it. The verdict of death is authorized by the evidence and is not contrary to law. This enumeration is without merit. See also Divisions 3 and 6 of this opinion where we complete our review of the death sentence.

3. In Enumeration 3, the defendant alleges that "The trial court erred in that the sentence of death is excessive or disproportionate to the penalty imposed in similar cases considering both the crime and the defendant, and that its imposition at trial violated defendant's right to due process."

The defendant argues that there is no mechanism by which he can present to the trial court and jury similar or disproportionate cases and hence this issue is not determinable by the trial judge or jury. We agree, at least insofar as the jury is concerned, but do not find this to be error.

Our revised death penalty statute imposes on this court the duty of determining "Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." Code Ann. § 27-2537 (c) (3). Under our statute, that decision is not one to be made as such by the jury. The validity of the statute has been upheld generally. Gregg v. Georgia, 428 U. S. 153 (96 SC 2909, 49 LE2d 859) (1976). Due process does not require jury determination of the excessive or disproportionate penalty question. This penalty question is one of cruel and unusual punishment and is for the court to decide.

4. In Enumeration 4, the defendant alleges that "The trial court erred when recharging the jury at its request,

by failing to make it clear that its finding of aggravated circumstances must be unanimous when the jury's request was not for a particular portion of the charge but for the whole charge on aggravated circumstances."

When instructing the jury for the first time during the sentencing phase, the trial judge charged the jury as to mitigating and aggravating circumstances, as to the jury's power to recommend mercy, as to the court's duty to impose sentence in accord with the jury's findings, as to the state's burden of proof beyond a reasonable doubt as to aggravating circumstances, and as to the form of their verdict. As regards the form of verdict the court explained the written forms to be given the jury, see Code Ann. § 27-2534.1 (c), and said that the verdict must be unanimous.

The jury requested recharge without specifying their inquiry. The judge recharged the jury completely down to the point of explaining the written forms. Instead of repeating himself, he asked if they had any question as to the written forms. When the jury forelady answered "no," the jury retired. As a consequence, the trial judge did not repeat that part of his charge in which he had advised the jury that their verdict as to sentence must be unanimous. We find no error. If doubt existed as to the unanimity of the verdict of death, the jury could have been polled. The defendant having passed the time for polling the jury will not be heard on appeal to complain that the verdict might not have been unanimous or that the jury might not have understood their verdict must be unanimous.

Defendant's assertion that the court erred in failing to instruct the jury that if they were not unanimous in recommending death, the court would impose a life sentence, is equally without merit.

5. In Enumeration 5 the defendant alleges that "The statutory mitigating and aggravating circumstances as used in defendant's trial are not capable of unanimous decision without a polling of the jury in that Code Ann. § 27-2534.1 (b) (7) is stated in the disjunctive with nothing to indicate that every member of the jury agreed on each of the alternative aggravating circumstances in each phrase of the charge."

The statutory aggravating circumstance in Code

Ann. § 27-2534.1 (b) (7) is as follows: "The offense of murder . . . was outrageously *or* wantonly vile, horrible *or* inhuman in that it involved torture, depravity of mind, *or* an aggravated battery to the victim." (Emphasis supplied.) The defendant urges that if one juror found the murder to be outrageously vile whereas another found it to be horrible and another found it to be inhuman, their verdict would not be unanimous. He urges that some jurors might find torture to the victim whereas others might find not torture but depravity in the mind of the defendant. He argues that the disjunctive factors are so dissimilar as to render possible fragmented findings by different jurors nevertheless arriving at a unanimous conclusion. We disagree.

We find no significant dissimilarity between outrageously vile, wantonly vile, horrible or inhuman. Considering torture and aggravated battery on the one hand as substantially similar treatment of the victim and depravity of mind on the other hand as relating to the defendant, we find no room for nonunanimous verdicts for the reason that there is no prohibition upon measuring cause on the one hand by effect on the other hand. That is to say, the depravity of mind contemplated by the statute is that which results in torture or aggravated battery to the victim. Thus, that aggravating circumstance specified in Code Ann. § 27-2534.1 (b) (7) is not incapable of unanimity.

Moreover, the rule is as follows: "It is not necessary that a jury, in order to find a verdict, should concur in a single view of the transaction disclosed by the evidence. If the conclusion may be justified upon either of two interpretations of the evidence, the verdict cannot be impeached by showing that a part of the jury proceeded upon one interpretation and part upon the other." People v. Sullivan, 173 N. Y. 122, 127 (65 NE 989) (1903). See also People v. Chavez, 37 Cal. 2d 656 (234 P2d 632, 641) (1951); People v. Seastone, 3 Cal. App. 3d 60 (82 Cal.Rptr. 907, 912-913) (1969); State v. Flathers, 57 S. D. 320 (232 NW 51, 72 ALR 150) (1930).

6. *Sentence Review:* In our sentence review we have considered the aggravating circumstance found by the jury and the evidence concerning the crime and the

defendant introduced in court. We have reviewed the sentence as required by Ga. L. 1973, p. 159 (Code Ann. § 27-2537 (c) (1-3)), as we have in each case involving a death penalty imposed under this statute. We conclude that the sentence of death imposed on Joseph James Blake was not imposed under the improper influence of passion, prejudice or any other arbitrary factor. Although the defendant urges that he was prejudiced by testimony of his former wife concerning threats to her two-year-old child and evidence that the defendant had been charged with aggravated assault but convicted of simple battery upon his former wife (Code Ann. § 27-2503 (a)) authorizes consideration at the sentencing phase of felony cases of "the record of any prior criminal convictions and pleas of guilty or pleas of nolo contendere of the defendant" and does not limit consideration to prior felonies or capital felonies. The jury was entitled to consider the prior misdemeanor conviction. Code Ann. § 27-2503 (b).

The jury found as a statutory aggravating circumstance that the offense of murder was "outrageously or wantonly vile, horrible, or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim" (Code Ann. § 27-2534.1 (b) (7)), and the evidence supports the jury's finding. In this connection see also Division 2 of this opinion.

In "battered child syndrome" cases resulting in death, life sentences have been imposed in some cases. See *Wheeler v. State,* 229 Ga. 617 (193 SE2d 814) (1972); *Stamper v. State,* 235 Ga. 165 (219 SE2d 140) (1974); *Proveaux v. State,* 233 Ga. 456 (211 SE2d 747) (1974); *Davis v. State,* 234 Ga. 730 (218 SE2d 20) (1974); *Rampley v. State,* 235 Ga. 101 (218 SE2d 838) (1974). We do not here decide whether the death penalty may or may not be imposed in typical "battered child" cases pursuant to Code Ann. § 27-2537(c) (3). The case before us is not a typical "battered child" case. Here there was no prior history of harm to the child, no hostility toward the child, and no doubt as to the intent to kill the child by a single act of violence. Here there was an intentional murder brought on by frustration at the mother's unwillingness to comply with the defendant's demands. His prior conduct indicates his use of this technique to force compliance with his

wishes. The jury was authorized to find that the act was carefully thought out and executed from the time the child was methodically taken from her home by the rear door and culminated in dropping or throwing the child from a height in excess of 100 feet into the river below.

In reviewing the death penalty in this case, we have considered the cases appealed to this court since January 1, 1970, in which a death or life sentence was imposed and we find the similar cases listed in the appendix support affirmance of the death penalty. All of the cases listed in the appendix involved not-for-profit execution-style murders and those juries found only the same statutory aggravating circumstance, that the offense of murder was outrageously or wantonly vile, horrible or inhuman, etc. Code Ann. § 27-2534.1 (b) (7). In two of these cases the victims were children. (*House,* two male victims age 7, and *McCorquodale,* one female victim age 15). None of the victims have been as young as the two-year-old victim here.

This murder was an execution, albeit without a weapon, intentionally and knowingly carried out. Stripped of self-serving overtones this killing was nothing less than an act of vengeance against the victim's mother.

Although Joseph James Blake's callousness may be excessive and disproportionate to that of other defendants, his sentence to death for this murder is not excessive or disproportionate to the penalty imposed in similar cases considering both the crime and the defendant.

*Judgment affirmed. All the Justices concur.*

ARGUED APRIL 11, 1977 — DECIDED JUNE 28, 1977.

*Reginald C. Haupt, Jr.,* for appellant.

*Andrew J. Ryan, III, District Attorney, William H. McAbee, II, Chief Assistant District Attorney, Arthur K. Bolton, Attorney General, Susan V. Boleyn, Staff Assistant Attorney General,* for appellee.

APPENDIX.

*House v. State,* 232 Ga. 140 (205 SE2d 217) (1974);

*McCorquodale v. State,* 233 Ga. 369 (211 SE2d 577) (1974); *Harris v. State,* 237 Ga. 718 (230 SE2d 1) (1976); *Dix v. State,* 238 Ga. 209 (222 SE2d 47) (1976); *Pryor v. State,* 238 Ga. 698 (234 SE2d 918) (1977).