## 37048. ANDERSON v. THE STATE.

GREGORY, Justice.

Appellant was convicted of possession of one-third of an ounce of marijuana with intent to distribute, in violation of the Georgia Controlled Substance Act. He was sentenced to ten years, five to be served on probation.

The evidence adduced at trial showed that a Dougherty County narcotics agent received a telephone call from a confidential informant who told him that a black male, wearing a multicolored jacket, was dealing in drugs at Cuffy's Pool Hall. Proceeding to the pool hall, police officers spotted appellant, who fit this description, standing on a street curb outside Cuffy's. The appellant initially walked toward the officers' unmarked car, then turned abruptly and began to run. Announcing that they were police officers, the agents pursued appellant on foot. Appellant dropped two envelopes before he was finally apprehended. One envelope contained a small amount of marijuana; the other, a plastic zip lock bag, contained seven separate envelopes of marijuana. Their combined weight totalled approximately 10 grams. Police found $101 in small denominations in appellant's sock.

(1) At trial appellant argued that the narcotic agent's statement that a confidential source had informed him that a black male, wearing a multicolored jacket, was dealing in drugs at Cuffy's Pool Hall, was inadmissible as hearsay. The trial court permitted the testimony under Code Ann. § 38-302, to explain the conduct of the officer in going to Cuffy's Pool Hall.

Appellant argues that the admission of this testimony denied him his right to confrontation of witnesses under the Sixth Amendment because "the court allowed the exact words of what the informant told the policeman to be admitted into evidence."

Code Ann. § 38-302 provides: "When, in a legal investigation, information, conversations, letters and replies, and similar evidence are facts to explain conduct and ascertain motives, they shall be admitted in evidence, not as hearsay, but as original evidence."

In *Harrell v. State,* 241 Ga. 181, 185 (243 SE2d 890) (1978) we rejected the argument that Code Ann. § 38-302 unconstitutionally

deprives a defendant of his Sixth Amendment right to confront witnesses. There we noted that those cases which have found a violation of the Sixth Amendment have dealt with the admission of hearsay testimony, but that "testimony given by an investigating law enforcement officer as to his conversations with victims and witnesses is admissible under Code Ann. § 38-302 not as hearsay but as original evidence . . . [S]uch testimony is admissible under the code section only as original evidence 'to explain conduct' of the investigating officer, not as original evidence of the defendant's guilt." See also *Germany v. State,* 235 Ga. 836 (221 SE2d 817) (1975). We recognize that testimony which comes in under § 38-302 is not admitted to prove the truth of facts contained in the testimony, but is admitted only to explain the subsequent conduct of those law enforcement officers who heard the facts. Furthermore, "[t]he evidentiary value of testimony admitted under Code Ann. § 38-302 depends not on the credibility of the out-of-court declarant, but on the credibility of the witness on the stand who is reporting the statement for the purpose of explaining *his conduct.* That witness is under oath, subject to full cross examination, and present for the jury to observe his demeanor while testifying in regard to the statement." *Harrell,* supra, at 185.

Relying on *Stamper v. State,* 235 Ga. 165 (219 SE2d 140) (1975), appellant also argues that it was unnecessary to permit the officer to testify to the "entire conversation" he had with the informant in order to explain his conduct in going to Cuffy's Pool Hall. In *Stamper* we held that the statement by a child to a neighbor that her father was the person who beat her was not admissible under § 38-302 as it was not a statement necessary to explain the neighbor's conduct of taking the child to a doctor. However, in this case, testimony of the conversation between the agent and the confidential informant was necessary, not only to explain the agents' conduct in going to the pool hall to look for the described person who was allegedly dealing in drugs, but also to explain why they gave chase when the appellant began to run. "[I]t is proper for peace officers to testify that a certain person is reported to be handling liquor, in explaining why a search warrant was procured and why a raid was made. But such hearsay evidence is not admissible to prove the crime." *Hix-Green Co. v. Dowis,* 79 Ga. App. 412, 419 (53 SE2d 601) (1949); *Germany v. State,* supra.

At the time the State offered the testimony of the officer, the trial court instructed the jury that the officer's testimony was admissible solely for the purpose of explaining his conduct. At the close of all the evidence the court fully charged the jury that the statements of the officer regarding his conversation with the

confidential informant were admissible only for the purpose of explaining his conduct and should not be considered by the jury as direct evidence. Therefore, we find no merit in this argument.

(2) Appellant next argues that the State failed to show a proper chain of custody of the marijuana which he allegedly dropped while being pursued by the police. At trial Officer Pritchard testified that, at the time of appellant's arrest, Officer Godwin brought him one envelope of marijuana and a plastic bag containing seven envelopes of marijuana which appellant had dropped. Pritchard testified that he kept these in his possession until he turned them over to Officer Katchmar, the contraband officer. Officer Godwin testified that he turned the contraband over to Pritchard. Officer Katchmar testified that he was "pretty sure" Officer Godwin turned the envelopes of marijuana over to him. Katchmar testified that, after receiving the marijuana, he placed it in the evidence locker and then personally delivered it to the State Crime Lab. An analyst from the State Crime Lab testified that he had possession of the marijuana until the morning of appellant's trial when he gave it to the district attorney.

Appellant argues that the discrepancy in the testimony of the officers as to who handed over the marijuana to Officer Katchmar renders the chain of custody improper.

Where the State seeks to introduce evidence of a fungible nature, it must show a chain of custody adequate to preserve the identity of the evidence. *Terry v. State,* 130 Ga. App. 655 (204 SE2d 372) (1974). The burden is on the State "to show with reasonable certainty that the evidence is the same as that seized and that there has been no tampering or substitution." *Johnson v. State,* 143 Ga. App. 169 (237 SE2d 681) (1977); *Thornberry v. State,* 146 Ga. App. 827 (247 SE2d 495) (1978). The State need not negative every possibility of tampering, and "need only establish reasonable assurance of the identity" of the evidence. *Patterson v. State,* 224 Ga. 197, 199 (160 SE2d 815) (1968). "[W]hen there is only a bare speculation of tampering, it is proper to admit the evidence and let what doubt remains go to the weight." *Johnson,* supra, at 170.

Appellant has produced no evidence to show substitution of or tampering with the evidence. He relies solely on the discrepancy in testimony as to who gave the marijuana to the contraband officer. However, it is clear from the record that the marijuana was in the custody of the law enforcement officers at all times until taken to the State Crime Lab. Thus the State has shown with "reasonable certainty" that the marijuana offered into evidence is the same as that which was seized.

(3) After the jurors had deliberated for three hours, the trial

court recalled them and inquired if they had reached a verdict. The foreman responded in the negative and stated that he had "doubts" as to whether there was a "reasonable possibility" that a verdict could be reached. The trial court then excused the jury until the following morning. At that time the court charged them:

"All right, ladies and gentlemen, it is your duty as jurors to agree on a verdict in this case if you possibly can. The case has been fully and completely tried and you are just as competent as any jury would be in disposing of it. It is the duty of every juror to consult with every other juror and reach a mutual understanding in the case. The Court does not mean to say that a juror should give up an abiding conviction in the matter, but it is your duty to reconcile such differences, if any exist, and if it is possible to do so. I have not expressed and do not now express any opinion in this case; I do not tell you what your verdict should or should not be, that is a matter for you to determine. So, as reasonable people go to your jury room and reason together and make an effort to make a unanimous verdict you think speaks the truth."

After the jury retired to the jury room, appellant objected to the so-called "Allen charge" and moved that the court bring the jury back in and re-instruct them on the State's burden of proof. The trial court denied appellant's motion.

Appellant argues on appeal that the "Allen charge," a supplemental instruction given to encourage deadlocked juries to reach an agreement, tends to lessen, in the jurors' minds, the State's burden to prove every element of the offense charged beyond a reasonable doubt. Thus, he posits, to minimize the effect of the "Allen charge" on the jury, the trial court should be required to recharge on the State's burden of proof whenever it gives the "Allen charge."

The "Allen charge" derives its name from Allen v. United States, 164 U. S. 492 (17 SC 154, 41 LE 528) (1896). There the United States Supreme Court approved a charge which the Court summarized as stating that a verdict of "absolute certainty" could not be expected in each case; that it was the duty of each juror to decide the case if he could do so; that the jurors "should listen, with a disposition to be convinced, to each other's arguments; that, if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, upon the other hand, the majority was for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority." Allen, supra, at 501.

Recognizing that "[t]he very object of the jury system is to

secure unanimity by a comparison of views, and by arguments among the jurors themselves," the Court reasoned that it is permissible to instruct a deadlocked jury that no juror should retire to the jury room "with a blind determination that the verdict shall represent his opinion of the case at that moment," but, rather, that he should listen with deference to the arguments, "and with a distrust of his own judgment, if he finds a large majority of the jury taking a different view of the case from what he does himself." Allen, supra, at 501.

Although use of the "Allen charge" has been the subject of much criticism in recent years,[1] this court has consistently approved charges similar to the one given in this case. See, *Spaulding v. State,* 232 Ga. 411 (207 SE2d 43) (1974); *Ponder v. State,* 229 Ga. 720 (2) (194 SE2d 78) (1972); *Ratcliff v. Ratcliff,* 219 Ga. 545 (134 SE2d 605) (1964).

Considering the "Allen charge" in this case as a whole, we conclude that it was not so extreme or improper as to deprive appellant of his right to a fair trial, nor did it, in any manner, suggest to the jury that the State's burden of proving each element of the crime had diminished.

Therefore, we find no merit to this argument.

(4) Last, appellant argues that the evidence was not sufficient to sustain the verdict. We have thoroughly examined the record in this case and conclude that a rational trier of fact could find the appellant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. All the Justices concur, except Smith, J., who dissents as to Division 1.*

DECIDED APRIL 8, 1981.

*Divine, Wilkin, Deriso, Raulerson & Fields, Keith T. Dorrough,* for appellant.
*William S. Lee, District Attorney, Will Wilburn, Assistant District Attorney,* for appellee.

---

[1] See United States v. Fioravanti, 412 F2d 407 (3rd Cir. 1969); United States v. Brown, 411 F2d 930 (7th Cir. 1969); United States v. Thomas, 449 F2d 1177 (D. C. Cir. 1971); State v. Marsh, 490 P2d 491 (Ore. 1971); Comments, "Instructing Deadlocked Juries," 78 Yale L. J. 100 (1968).