41747. BAXTER v. THE STATE.
(331 SE2d 561)

SMITH, Justice.

Norman Darnell Baxter was convicted in Henry County for the murder of Katherine June Moore. He was sentenced to death. This case is here on direct appeal for review under the Unified Appeal Procedure (252 Ga. A-13 et seq.) and for sentence review required by OCGA § 17-10-35.[1] We affirm.

---

[1] The crime was committed on July 6, 1980. The Henry County jury returned its verdict of guilty on September 30, 1983. A motion for new trial was filed on October 31, 1983, and

Around 11:00 p.m. on Saturday, July 5, 1980, June Moore left her parent's house in McDonough to return to her room at the Safari Inn in Henry County. Her family became concerned when she did not appear at the Safari Inn pool the next day to meet them as planned. When they could not locate her on July 7, they filed a missing persons report with the police.

On July 13, tourists found her nude, partially decomposed body in a wooded area to the west of the Safari Inn. Her hands and feet were bound, and a ligature was tied around her throat. She had been strangled.

Hunters found her car deep in the woods near the Safari Inn on October 14, 1980. The car had been partially stripped. Ms. Moore's parents determined that her diamond ring, her .22 caliber pistol, her hot curler case, and a red dress were missing from her car and her room.

Appellant and his ex-wife, Kathy Walker, spent the Fourth of July weekend of 1980 at the Safari Inn. She testified that they returned to their room from an evening out sometime between midnight and 3:00 a.m. on Sunday, July 6. She recalled that appellant left the room shortly after their return, stating that he saw a "money making thing" in the parking lot.

According to her further testimony, appellant returned to the room just after dawn. He smelled terrible and was extremely dirty and sweaty. He brought with him a red dress, a solitaire diamond ring, a hot curler case, a scarf, a small pistol, and some bullets for the pistol. He claimed that he had stolen the objects from the trunk of a car in the parking lot.

She and appellant immediately left the Safari Inn and spent the next few days at motels along I-75 south of Atlanta. Appellant's abusive behavior finally drove her to flee as he paid the bill at an Omelette Shoppe. On her way to refuge at her grandmother's house in Newton County, she threw the pistol, the scarf, and the dress in a dumpster near Porterdale. Appellant, shortly thereafter, sold a ring to the Money Tree Pawn Shop.[2]

In late July or August of 1980, appellant took two of his acquaintances and one of his brothers to see a Ford Futura that matched the description of the victim's car. They testified that appellant had hidden the car deep in the woods near the Safari Inn. At

---

the transcript of evidence was filed on November 14, 1983. The motion for new trial was amended August 10, 1984 and was heard and overruled on September 21, 1984. The notice of appeal was filed October 22, 1984. The record was docketed in this Court on November 20, 1984, and the case was argued on March 11, 1985.

[2] Appellant's brother described the ring as a diamond ring, and he testified that appellant claimed to have found the ring on the side of a road.

trial, they described with particularity certain items that police had found in the car.

Two of appellant's fellow inmates in the Chatham County Jail testified that appellant had told them that he had choked a woman to death in Atlanta or "North Georgia." A fellow inmate in the Henry County Jail testified that appellant claimed to have strangled a girl at the Safari Inn during a drug deal. According to this inmate, appellant reported that he sold the victim's drugs and bought his wife a white Cadillac with the proceeds.

1. In his first, second, and thirty-first enumerations of error, appellant raises the general grounds. We find the evidence sufficient to support the jury's verdict. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. In his third, fourth, and fifth enumerations, appellant charges that the trial court erred in refusing to grant him funds to hire investigators and expert witnesses. "[T]he general rule is that the grant or denial of a motion for assistance of expert witnesses and other investigative services lies within the sound discretion of the trial court." *Castell v. State*, 250 Ga. 776, 783 (301 SE2d 234) (1983).

(a) The trial court appointed two attorneys to represent appellant in this case in January 1983. The case came to trial in September, 1983. "Appellant had the assistance of two attorneys for [more than] five months prior to his trial. The court did not abuse its discretion by failing to provide additional funds for an investigator." *Wilson v. State*, 250 Ga. 630, 634 (300 SE2d 640) (1983). We find no error here.

(b) The trial court denied appellant's request for funds to hire demographic experts and psychologists to assist him in his challenge to the grand jury selection and jury qualification, and medical experts to assist him in analyzing the physical evidence. While the appropriation of such funds may be authorized under OCGA § 17-12-5, in light of the testimony actually produced as to the grand jury and jury qualification questions, and the nature of the expert testimony produced by the state regarding the time of the victim's death, we find no abuse of discretion in the denial of appellant's motion for funds to hire experts. *Patterson v. State*, 239 Ga. 409, 412 (238 SE2d 2) (1977).

3. In his sixth, eleventh, eighteenth, twenty-third, and thirty-fifth enumerations of error, appellant claims that the trial court and the state refused to give him exculpatory or favorable information upon request in violation of *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963).

(a) Appellant initially claims that the trial court erred in refusing to force the state to provide him with updated rap sheets for its witnesses. At a hearing on this motion, the district attorney stated, "That is all the rap sheets that I have in my file . . . However, I made

the statement if Mr. McGarity will contact me on individual cases, I will not look them up for him because I do not have time, but I will make the GCIC computer available to him. I will make arrangements with the police department." We find no error. *Keller v. State*, 253 Ga. 512, 513 (322 SE2d 243) (1984).[3]

(b) Appellant next contends that the trial court's refusal to provide him with summaries of Kathy Walker's pre-trial statements violated *Brady*, supra, as they differed substantially from her testimony at trial. Appellant asserts specifically that before trial she made no mention of appellant's referral to a "money making thing" in the parking lot of the Safari Inn on the night of the murder. Appellant claims that this new statement provided the jury with grounds for finding an aggravating circumstance, and was particularly harmful in light of Walker's refusal to talk with his attorneys.

In her pre-trial statements, Kathy Walker stated that appellant had simply told her that he was leaving the room for awhile. The testimony regarding appellant's referral to a "money making thing" appears to be an addition to her pre-trial statements. This addition does not, however, create an inconsistency in her testimony. Throughout her involvement with the investigation, Walker maintained that appellant claimed to have stolen the goods in question from the trunk of a car. As the trial court found, this is consistent with the testimony as to the "money making thing."[4] We find no inconsistency and no error. *Roberts v. State*, 243 Ga. 604, 605 (255 SE2d 689) (1979).

4. The state refused to respond to appellant's request for Walker's address. The district attorney advised her that appellant's attorneys wished to speak with her, but that she did not have to speak with them if she did not wish to do so. In his seventh and twelfth enumerations, appellant claims that the state, in effect, discouraged Walker from talking with appellant's attorneys, thereby severely hampering appellant's investigation of the case.

While the state, in most instances, should provide a defendant with the telephone numbers and addresses of its witnesses, this was not required. *Roberts*, supra at 606.[5] Here, there was ample evidence of appellant's violent behavior towards the witness to justify the state's decision to withhold the information from appellant. In addition, Walker was not required to speak with appellant's attorneys if she did not so desire. *Dover v. State*, 250 Ga. 209 (296 SE2d 710)

---

[3] We note that the state's action here apparently satisfied both the majority and the dissent in *Keller*.

[4] The trial court reviewed Walker's previous statements as she testified, with an eye towards inconsistencies.

[5] For the rule on this issue after July 1, 1985, see Uniform Rules for the Superior Courts, Rule 30.3, 253 Ga. 853.

(1982). The district attorney merely informed her of that right.[6] We find no error.

5. Appellant, in enumerations eight and nine, asserts that the trial court erred in refusing to provide him with a daily transcript of the day's testimony, and in refusing to allow him to submit a jury questionnaire to prospective jurors prior to voir dire.

(a) We find no abuse of discretion in the trial court's refusal to provide appellant with a daily transcript. *Nunnally v. State*, 235 Ga. 693, 699 (221 SE2d 547) (1975).

(b) The control of voir dire lies within the discretion of the trial court. *Waters v. State*, 248 Ga. 355, 363 (283 SE2d 238) (1981). We find no abuse of discretion in the trial court's refusal to allow the submission of the jury questionnaire prior to trial.

6. Appellant claims, in his tenth enumeration, that the trial court erred in denying his motion to suppress.

On March 25, 1983, a detective for the Henry County Police and a Henry County Assistant District Attorney interviewed appellant at the Chatham County Jail, where he was being held on charges unrelated to the Moore murder. Appellant had requested the interview with the hope that his help in the Moore case would cause the Chatham County authorities to be lenient with him. At the interview, he described Moore's car as it had been found, and he claimed to know more about the crime. Appellant's Savannah attorney was aware of the interview and had planned to attend, but he did not appear at the interview.

In early October, the assistant district attorney requested a follow-up interview with appellant. He interviewed appellant in the presence of his Savannah attorney on October 7, 1983. At the interview, appellant named an acquaintance as the murderer of Ms. Moore, and he provided detailed information about the crime. Appellant asserts that the trial court should have suppressed, as fruit of the poisonous tree, all evidence that the state acquired as a result of these two interviews, since no one read appellant his *Miranda* rights.

*Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), simply does not apply to a situation such as the first interview. "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, supra at 444. Appellant initiated the first interview himself.[7] Appellant volunteered information to the Henry County authorities in an uninduced attempt to gain favorable treatment from the

---

[6] That right also allows a witness to refuse to give a deposition.

[7] Thus distinguishing this case from *Mathis v. United States*, 391 U. S. 1 (88 SC 1503, 20 LE2d 381) (1967).

Chatham County authorities. "There is no requirement that police stop . . . a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." *Miranda*, supra at 478.

The second interview presents a different situation as appellant's counsel attended the session, and as the state initiated the interview. The *Miranda* court stated, "The presence of counsel . . . would [have been, here,] the adequate protective device necessary to make the process of police interrogation conform to the dictates of the privilege [against self-incrimination]." *Miranda*, supra at 466. We likewise hold, assuming even that the second interview amounted to a custodial interrogation, that the presence of appellant's attorney provided an "adequate protective device" in this case. See *United States v. Jackson*, 390 F2d 317 (2nd Cir.), *cert. denied*, 392 U. S. 935 (1968); *Dempsey v. State*, 225 Ga. 208 (166 SE2d 884) (1969).

As the state did not violate appellant's right against self-incrimination in either interview, the trial court correctly denied appellant's motion to suppress.

7. Appellant, in his thirteenth enumeration, charges that the court erred in refusing to allow his counsel to ask six specific questions during voir dire.

Appellant's attorney sought to ask: a) "Do you have an understanding what the term presumption of innocence means to you?" and; b) "What does the term reasonable doubt mean to you?" "Both questions were of a technical legal nature as they were subjects of the instruction by the court at the conclusion of the trial. They therefore were not a proper area for voir dire examination." *Wallace v. State*, 248 Ga. 255, 259 (282 SE2d 325) (1981); see also *Stack v. State*, 234 Ga. 19, 26 (214 SE2d 514) (1975).

Appellant's counsel also desired to ask prospective jurors whether they "[felt] that Mr. Baxter, the man on trial, . . . must have done something wrong or he would not [have been there]?" Questions amounting to a prejudgment of the case are improper in a voir dire examination. *Pinion v. State*, 225 Ga. 36, 37 (165 SE2d 708) (1969). The trial court did not abuse its discretion in excluding this question.

Appellant's counsel sought the prospective jurors' views on abortion. This question would not show "any interest of the jurors in the case, or any leaning or bias which the jurors might have respecting the crime for which the defendant was on trial." *Curtis v. State*, 224 Ga. 870, 871 (165 SE2d 150) (1968). The question was thus subject to exclusion.

Appellant's attorney finally, in two questions, attempted to discern the prospective jurors' prospective responses to the possibility that appellant might not testify at trial. Under *Pinion*, supra, these

questions were properly excluded as they sought a prejudgment of the case. We find no error in the voir dire.

8. In his fourteenth, twenty-fifth, and twenty-sixth enumerations, appellant challenges the admissibility of certain evidence admitted by the trial court.

(a) Appellant first cites the admission of four photographs of the victim as error. While appellant acknowledges that none of the photographs were taken after an autopsy had been performed, he asserts that the alteration in the body's state, caused by exposure to the elements and evident in the photographs, brings the photographs within the ambit of *Brown v. State*, 250 Ga. 862 (302 SE2d 347) (1983). Photographs of the victim's body are generally admissible. *Hill v. State*, 254 Ga. 213 (326 SE2d 757) (1985). *Brown*, supra, applies to alterations caused by an autopsist, not the combined forces of the murderer and the elements. Appellant's argument is novel but unpersuasive.

(b) Appellant next asserts that the trial court erred in allowing the state to introduce the ligatures found around the victim's throat into evidence. This was not error. *Ruffin v. State*, 243 Ga. 95, 98 (252 SE2d 472) (1979).

(c) Appellant contends that the trial court erred in admitting into evidence photographs of the dumpster where Kathy Walker allegedly disposed of the pistol and of the landfill where the dumpster would have been emptied. As appellant has not shown any harm caused by the admission of these photographs, we find that "in all likelihood, [they] did not contribute to appellant's conviction." *Mitchell v. State*, 254 Ga. 353 (329 SE2d 481) (1985). We thus find error here, if committed, harmless.

9. Appellant claims, in his fifteenth enumeration, that the trial court erred in requiring production of his list of witnesses after voir dire examination. "[T]he witness list was ordered after both sides invoked the rule of sequestration. It was within the court's discretion to order production of a list of defense witnesses in order to enforce the rule of sequestration." *Fugitt v. State*, 254 Ga. 521, 522 (4) (330 SE2d 714) (1985). We find no error.

10. Appellant, in his sixteenth, twenty-fourth, thirty-second, and thirty-third enumerations, asserts that the trial court erred in sustaining certain objections made by the state at trial.

(a) First, appellant claims that he should have been allowed to ask the victim's father why he had requested her to stop seeing Don Bussey, her old boyfriend who initially was a suspect in the case. After appellant's counsel rephrased the question, the victim's father stated the purpose of his attempt to prevent Bussey from seeing the victim. We find no error.

(b) Appellant next contends that he should have been allowed to question Kathy Walker as to the origin of the funds with which she

purchased a Cadillac. At the time appellant's counsel posed this question, the subject matter was irrelevant. The trial court did not err in sustaining the state's objection.

(c) Appellant asserts that the trial court erred in refusing to consider the testimony of Sergeant Dunlap of the Henry County Sheriff's Department at a hearing on a motion to suppress. Appellant claimed that Dunlap's testimony would impeach the testimony of one of the inmates who testified against appellant. Appellant specifically claimed that Dunlap would show that appellant and the inmate could not have spoken at the time that the inmate claimed appellant confessed. Appellant states, "If Dunlap was believed, [the inmate] McWilliams' testmony could not be truthful," thus, Dunlap's testimony should have been considered.

Appellant's motion to suppress was based upon the theory that the inmate was an agent of the state.[8] While the specific segments of testimony cited by appellant may raise some doubts as to the inmate's credibility, the testimony as a whole was ambiguous as to the issue involved in the motion to suppress, and the trial court did not err in refusing to consider the testimony.

(d) Appellant finally contends that the trial court erred in refusing to allow a police officer to testify as to the nature of a complaint registered about the victim by Bussey's new girl friend. We agree with the state that appellant did place evidence of difficulties between the new girl friend and the victim before the jury. We find no error in the exclusion of the testimony as to the source of the difficulties.

11. Appellant asserts, in his seventeenth enumeration, that the trial court erred in refusing to strike the testimony of the victim's sister.

During her first interview with the Henry County Police, the victim's sister identified appellant when she was shown his photograph. She subsequently picked appellant's picture out of a group of photographs. She later identified appellant at trial. She then testified that she and the victim had seen appellant at the Safari Inn pool on July 4, 1980. She claimed to have seen appellant winking at the victim and flirting with her.

Appellant claims that the initial showing of the single photograph was overly suggestive and therefore tainted the courtroom identification. Here, as in *Burrell v. State*, 239 Ga. 792 (239 SE2d 11) (1977), the witness established a basis for her courtroom identification independent of the single photograph. We find no error.

12. Appellant, in his nineteenth and twentieth enumerations, contends that two of the inmates who testified against him were

---

[8] We reject this contention in Division 12, infra.

agents for the state and should not have been allowed to testify under *United States v. Henry,* 447 U. S. 264 (100 SC 2183, 65 LE2d 115) (1979).

In *Henry,* supra, the United States Supreme Court required the suppression of an incriminatory statement made by a defendant to a fellow inmate. The fellow inmate was a paid informant placed in jail with the defendant under a contingent fee arrangement. The court relied upon the facts that: 1) The informant was paid by, and was acting under the instructions of government; 2) He was "ostensibly no more than a fellow inmate of [the defendant]," and; 3) The defendant was "in custody and under indictment at the time that he was engaged in conversation with [the informant.]" *Henry,* supra at 270.

The facts established pursuant to appellant's motion to suppress the two statements show that neither inmate acted as a paid informant subject to the state's direction. Both inmates testified that they acted out of hope for lenient treatment at the hands of the state. Both also testified that they received no promises of help in return for any evidence that they might produce.

The trial court was entitled to find from the evidence presented that the inmates, not the state, initiated contact with appellant. An inmate who acts upon the expectation of an unpromised reward does not thereby become an agent for the state. We therefore find *Henry,* supra, inapplicable and the testimony admissible. See *Harper v. State,* 249 Ga. 519, 528 (292 SE2d 389) (1982).

13. Appellant, in his twenty-first enumeration, claims that the trial court's charge on impeachment by production of prior inconsistent statements coupled with its refusal to compel the state to produce Kathy Walker's pre-trial statements constituted error. As we have decided that Walker's trial statements are not inconsistent with her testimony at trial, we find no error.

14. Appellant, in his twenty-second enumeration, contends that the trial court erred in giving the following charge:

"I charge you that if you find that the crime in the indictment as charged has been committed and certain property was stolen, and if recently thereafter the defendant was found in possession of such stolen property or any part thereof, that would be a circumstance along with the other evidence in the case from which the jury may infer the guilt of the defendant of the theft and of the charge made on this indictment if you find that there is a connection and if you should see fit to do so, unless of course, the defendant has made an explanation of his possession, if any, consistent with his plea of not guilty."

Appellant does not contend that this charge creates an impermissible presumption such as the one found in *Francis v. Franklin,* 37 CLR 3019 (Decided April 29, 1985). He asserts, rather, that the trial court "went too far by stating to the jury that they could infer the

guilt of the Appellant of . . . murder," from recent possession of stolen goods. We disagree.

Immediately before the challenged portion of the jury charge the trial court charged the jury that presence at the crime scene, alone, would not sustain a guilty verdict, and that suspicious circumstances would not be sufficient either. The challenged portion of the charge simply presented another possible approach to the circumstantial evidence developed in the case. *Williamson v. State*, 248 Ga. 47, 54 (281 SE2d 512) (1981). We find the challenged instruction balanced, as a whole, and we thus find no error.

15. Appellant, in his twenty-eighth enumeration of error, contests the propriety of the admission into evidence of a pawn ticket bearing his name.

The pawn ticket clearly constitutes a record of a transaction. The owner of the pawn shop testified that he normally kept records, such as the one in question, as a normal practice, on "every transaction, pawn or purchase." He also testified from observation of the ticket in question that it was an original ticket from his shop filled out "at the time of purchase," and sent that day to the police department. Lt. Harrison of the Clayton County Police Department testified that he was custodian of the pawn ticket in question after it was delivered from the pawn shop on the day that it was filled out.

The ticket constituted a contemporaneous record of a transaction made in the regular course of business pursuant to regular business practices, and thus was admissible as evidence of the transaction under OCGA § 24-3-14.

16. Appellant, in his twenty-ninth and thirtieth enumerations, claims that the trial court twice allowed into evidence testimony as to his bad character bearing no independent relevance to the issues at trial.

Gene Couch testified that appellant took him to see the victim's car when it was hidden in the woods near the Safari Inn. Couch stated that when he asked appellant where the car had come from, appellant responded that he had stolen it in Savannah. James Green testified that appellant had been talking to a reporter immediately prior to his "jailhouse confession" to Green. He stated at trial that appellant, in talking to the reporter, "wanted to give them [the media] information on [Moore's] murder so that, you know, he could get some leverage for the case he had there at the time."

"If evidence is relevant and material to an issue in [a] case, it is not inadmissible because it incidentally puts the defendant's character in issue. [Cits.]" *Davis v. State*, 249 Ga. 309, 310 (290 SE2d 273) (1982). Green's statement placed appellant's character in issue as his testimony showed that appellant was in jail on a charge that was unrelated to the Moore case. We find no error, however, because the

testimony was independently relevant as it explained the circumstances leading to the "jailhouse confession."

Couch's testimony as to appellant's alleged confession to stealing the victim's car from Savannah placed appellant's character in evidence. The confession, however, was clearly relevant to the issue of whether appellant stole the victim's car. The fact that he claimed to have stolen the victim's car from Savannah does not render this testimony inadmissible. *Davis*, supra.

17. Appellant, in his thirty-fourth enumeration, contends that the trial court erred in refusing to give one of his requested charges. As the trial court's charge presented the substance of the requested charge to the jury, and in fact almost mirrored appellant's requested charge, we find no error. *Boyd v. State*, 253 Ga. 515, 516 (322 SE2d 256) (1984).

18. In his twenty-seventh enumeration, appellant claims that the trial court erred in refusing to force the state to grant him access to notes used by a witness for the state to refresh his memory. We hold that a defendant in a criminal case has the right, upon request, to examine a document used by a witness to refresh his recollection. See *Hardin v. State*, 252 Ga. 99 (311 SE2d 462) (1984); see also *Williams v. State*, 250 Ga. 664 (300 SE2d 685) (1983), Weltner, J., concurring specially, and Hill, C. J., dissenting. We overrule any cases holding to the contrary. We find, however, that "in all likelihood, [the denial of access to the notes] did not contribute to appellant's conviction." *Mitchell*, supra at 355. We thus find the denial to be harmless error.

*Sentence Review*

19. Appellant contests two aspects of the trial court's charge given during the sentencing phase.

(a) Appellant, in his thirty-eighth enumeration, asserts that the court's charge on mitigation was insufficient. "[T]he jury [was] allowed and instructed . . . that it [had] the discretion, notwithstanding proof of aggravating circumstances, to sentence the defendant to life in prison for any reason satisfactory to the jury or without any reason." *Smith v. Francis*, 253 Ga. 782, 786 (325 SE2d 362) (1985). We find the trial court's instructions as to mitigating circumstances sufficient.

(b) In his thirty-seventh enumeration, appellant claims that the trial court erred in delivering the following charge to the jury: "[In connection with (b) (7)], you would determine whether or not the offense of murder was outrageously and wantonly vile, horrible, and inhuman, in that it involved torture to the victim and depravity of mind on the part of the defendant in that the death of the victim, Katherine June Moore, was caused by strangulation."

This instruction clearly informed the jury that a finding of strangulation alone would authorize a finding of aggravation under (b) (7). A finding of strangulation alone does not, as a matter of law, establish torture of the victim or depravity of mind on the part of the defendant. Cf. *Phillips v. State*, 250 Ga. 336, 339-342 (297 SE2d 217) (1982). Although the totality of the evidence in this case could authorize a finding of aggravation under (b) (7), as we hold in Division 20, infra, we find the challenged instruction to be unclear and potentially misleading. We will thus disregard the jury's finding of aggravation under (b) (7).

20. The jury found two aggravating circumstances: "(1) The defendant committed the offense of murder, for the purpose of receiving things of monetary value [OCGA § 17-10-30 (b) (4)]; (2) The offense of murder was outrageously and wantonly vile, horrible and inhuman in that it involved torture to the victim and depravity of mind on the part of the defendant [OCGA §17-10-30 (b) (7)]." Appellant charges, in his thirty-fifth enumeration, that the evidence developed in the case does not support either of the jury's findings of aggravation.

(a) The state produced evidence that appellant sold the victim's ring, stripped her car and attempted to sell various parts of the car, and took her pistol after murdering her. Kathy Walker, in addition, testified that appellant left their motel room on the night of the murder in search of a "money making thing." This evidence is sufficient to support a finding of the (b) (4) aggravating circumstance. See *Pulliam v. State*, 236 Ga. 460, 466-467 (224 SE2d 8) (1976); *Jarrell v. State*, 234 Ga. 410, 424 (216 SE2d 258) (1975).

(b) The state produced evidence that appellant strangled the victim with a ligature, removed her clothes, bound her hands and feet, and dumped her body in a secluded area. The state also provided evidence from which the jury could infer that the victim's hands and feet were bound and her clothes removed *before* she was murdered. The jury could conclude from this evidence that: 1) The murder was outrageously and wantonly vile, horrible and inhuman, *and* that; 2) The murder involved torture to the victim *or* depravity of mind of the defendant.[9] See *Hance v. State* 245 Ga. 856, 860 (268 SE2d 339) (1980). We find the evidence sufficient to support the jury's finding of the (b) (7) aggravating circumstance.

(c) In addition, we find that the death sentence imposed here is neither excessive nor disproportionate to penalties imposed in similar cases, considering both the crime and the defendant. OCGA § 17-10-

---

[9] We cannot say that "the [victim was] killed instantaneously," that the victim was "causing [appellant] extreme emotional trauma," or that appellant ever "acknowledged his responsibility and the heinous nature of his [crime]." *Godfrey v. Georgia*, 446 U. S. 420, 433 (100 SC 1759, 64 LE2d 398) (1980).

35 (c). See Appendix.

(d) We find that the sentence of death was not imposed under the influence of passion, prejudice, or any other arbitrary factor. OCGA § 17-10-35 (c) (2). As the evidence supported a finding of (b) (4) and (b) (7) aggravating circumstances, and in light of our review of the record, we conclude that the unclear charge on (b) (7) aggravating circumstances did not lead to the imposition of the death sentence under the influence of the above mentioned factors.

21. We have reviewed the prosecutor's closing argument at the sentencing phase of the trial, and we find no error. *Walker v. State*, 254 Ga. 149, 158 (327 SE2d 475) (1985).[10]

*Judgment affirmed. All the Justices concur.*

DECIDED JULY 3, 1985.

*Harrison & McGarity, Arch W. McGarity,* for appellant.

*E. Byron Smith, District Attorney, Michael J. Bowers, Attorney General, J. Michael Davis,* for appellee.

APPENDIX.

*Castell v. State,* 250 Ga. 776 (301 SE2d 234) (1983); *Tucker v. State,* 245 Ga. 68 (263 SE2d 109) (1980); *Ruffin v. State,* 243 Ga. 95 (252 SE2d 472) (1979); *Davis v. State,* 241 Ga. 376 (247 SE2d 45) (1978); *Morgan v. State,* 241 Ga. 485 (246 SE2d 198) (1978); *Alderman v. State,* 241 Ga. 496 (246 SE2d 642) (1978); *Corn v. State,* 240 Ga. 130 (240 SE2d 694) (1977); *Douthit v. State,* 239 Ga. 81 (235 SE2d 493) (1977); *Blake v. State,* 239 Ga. 292 (236 SE2d 637) (1977); *Smith v. State,* 236 Ga. 12 (222 SE2d 308) (1976); *Pulliam v. State,* 236 Ga. 460 (224 SE2d 8) (1976); *Jarrell v. State,* 234 Ga. 410 (216 SE2d 258) (1975); *Gregg v. State,* 233 Ga. 117 (210 SE2d 659) (1974).

[10] In particular, we find no error in the prosecutor's statement, "If you will look at the photographs, if you can bear to look at them . . ."