## 37216. NICHOLS v. THE STATE.

HILL, Presiding Justice.

The defendant went looking for the deceased telling a witness that he was going to kill the victim. The defendant found the victim and shot him and his young son in the presence of an eyewitness. The defendant later called the eyewitness' home to find out if "he had got" the victim. At trial the eyewitness testified that the defendant came up to the witness' pickup truck, pointed a pistol at the victim and said to the victim "I'm going to kill you." After the first shot, the eyewitness got out of the truck but heard 3 or 4 more shots fired. The defendant claimed self-defense in that the victim reached for a rifle in the rack of the pickup. The jury found the defendant guilty of murder and also aggravated assault upon the son.

1. The evidence supports the verdict beyond a reasonable doubt.

2. The witness who received the defendant's telephone call after the shooting testified that it was the defendant who called. It therefore was not harmful error, if any, for the sheriff to testify as to that call to explain his conduct (as the jury was instructed) in arresting the defendant.

3. The defendant admitted that he shot both the father and the four-year-old child. It therefore was not harmful error, if any, for the child's mother to testify that the wounded child told her within 5 minutes of the shooting, "Andrew [the defendant] shot me and my daddy, mama."

4. After deliberating about two and a half hours the jury announced they were "six and six." The next day, at midmorning, they reported they were "hopelessly deadlocked." After lunch, the court instructed the jury as follows: "Now you've been deliberating for some six hours on this case, and you are deliberating one thing in connection with each count and that is guilt or innocence. Now, of course, with respect to Count One, if you should find the Defendant guilty, you would come back and there would be another hearing, and you would then determine after another trial ... uh ... you would then go back to the jury room and determine what sentence would be imposed, that is, as to Count One if you should find him guilty. If you

should find him not guilty, then that terminates the case once and for all." The court explained that the court would set the sentence on count two if the defendant were found guilty on that count. The court then gave an inoffensive dynamite charge not in issue here. The jury found the defendant guilty on both counts within an hour.

The defendant contends the court erred in charging the jury they would determine the sentence as to count one. (The state withdrew its request for the death penalty and the court imposed a life sentence for the murder.) Defendant contends that the challenged instruction somehow caused the jury, which had been "hopelessly deadlocked," to reach a compromise verdict on guilt. He urges that the jury may have reached unanimity as to guilt, expecting to impose a sentence for years (something less than life). He argues that the jury does not determine the sentence in a death penalty case, just whether the death penalty shall be imposed, and thus the instruction was not a correct statement of the law.

Where the jury fixes the sentence in a bifurcated trial in the event of a finding of guilty, it is not error to explain the bifurcated trial procedure to the jury during the guilt-innocence phase, *Barnhill v. State,* 135 Ga. App. 654 (3) (218 SE2d 663) (1975), and where such explanation is given, it is not error to omit instruction as to the possible sentences which may be imposed. *Moore v. State,* 228 Ga. 662 (5) (187 SE2d 277) (1972).

As the matter stood at the time the instruction was given, it was a correct statement of the law. We find no error.

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 21, 1981 —
REHEARING DENIED MAY 5, 1981.

*Russell, McWhorter & Adamson, Robert W. Adamson,* for appellant.

*Nat Hancock, District Attorney, Arthur K. Bolton, Attorney General, Mary Beth Westmoreland, Assistant Attorney General,* for appellee.