## 38522. PENDER v. THE STATE.

JORDAN, Chief Justice.

Sixteen-year-old Scot Pender was convicted in Hancock County of the murder of his mother, Kathryn Pender Nicholls, and was sentenced to life imprisonment.

The victim was beaten and choked to death. Scot testified that he was in his bedroom preparing for bed when his mother, who previously had retired for the night, called to him from her bedroom for help; that when he went to her aid he was struck by a person on the nose and mouth and was knocked out; and that when he regained consciousness, he found his mother lying on her bedroom floor.

Scot's girlfriend testified that Scot had told her during their date earlier that night that he had a feeling something was going to happen to his mother. After the homicide, Scot telephoned his girlfriend and told her it had happened.

Scot's brother and sister are married and live a few miles away. His stepfather also has a home a few miles away. Only Scot and his mother lived in the house where the homicide occurred.

The state established that approximately two weeks before the homicide and over a period of some thirteen days Scot had cashed

checks on his mother's account in the total amount of $240 by signing her name to her personalized checks. The state's theory was that Scot killed his mother either because she had discovered or soon would discover his unauthorized use of her funds.

Scot testified that his mother and stepfather nearly always were away from home together on business trips, except on weekends, and that he had his mother's permission during her absences to withdraw money from her checking account to provide himself food, clothing and other necessaries. His sister's testimony supported his testimony that his mother always was concerned that he have sufficient money while she and their stepfather were away from home. His sister (the victim's daughter) also supported his testimony that their mother was in a very good mood on the day of the homicide because she and their stepfather had worked out a deal that would bring them some money to do things she had been wanting to do for a long time, such as fix up her house; that their mother did not mention to her during the conversation anything about forged checks.

The general grounds were not raised on appeal.

1. Scot first contends that the introduction into evidence of the checks he drew on his mother's account impermissibly put his character in evidence. The trial court admitted the checks to prove motive and instructed the district attorney out of the jury's presence to refrain from use of the word "forgery" in reference to the checks.

The state contends the checks were not admitted as evidence of a previous crime but, instead, for the purpose of showing Scot's motive for killing his mother, that is, either to keep her from learning about, or to quiet forever, her objections to his use of her funds.

This evidence plainly tends to establish motive, intent and bent of mind, and is admissible. *Pittman v. State,* 245 Ga. 453, 457 (3) (265 SE2d 592) (1980).

2. Scot next contends that the trial court erred by giving the following charge in connection with a standard Allen or dynamite charge: "Now ladies and gentlemen, I notice that in asking for a numerical count that I get eight, three and one. I presume that one of those numbers, either the eight, the three or the one, is abstaining. You cannot do that. You've got to take a stand. You've got to vote either one way or the other. Now, you can't say, 'Well, I'm just not here so don't count me.' Whatever verdict you enter has got to be unanimous, that is, it's got to be agreed to by all of you. So I just mention that to you." Thereafter, the court gave a standard Allen or dynamite charge, to which no objection has been stated. Allen v. United States, 164 U. S. 492 (17 SC 154, 41 LE 528) (1896).

Scot relies upon the case of *Riggins v. State,* 226 Ga. 381, 383 (3) (174 SE2d 908) (1970), in which the minority view jurors were instructed that they should abandon their views regarding sentence and join with the majority so as to avoid a mistrial. This court held that "Each juror has the right to form his own conviction. He is not required to surrender it because he is in the minority. He is not required to agree with the majority rather than cause a mistrial." 226 Ga. at 385.

The present case is distinguishable from *Riggins,* however, because the court here merely instructed the jurors that they were not permitted to abstain from voting either "guilty" or "not guilty." Code Ann. § 27-2301. We find no error. *Nichols v. State,* 247 Ga. 534 (4) (277 SE2d 50) (1981); *Anderson v. State,* 247 Ga. 397, 399 (3) (276 SE2d 603) (1981).

3. Scot's final contention is that he was denied effective assistance of counsel because trial defense counsel did not develop as an alternative theory that Scot's stepfather could have killed Scot's mother.

The jury heard testimony concerning the presence of Scot's stepfather at the scene earlier in the day, of his living some twenty-four miles away, and of his having left then returned after changing clothes. Whether those circumstances were sufficient to exclude every reasonable hypothesis other than the guilt of the accused was a question for the jury. We cannot say in this case that the verdict is unsupportable as a matter of law. *Knowles v. State,* 246 Ga. 378, 385 (6) (271 SE2d 615) (1980). We cannot conclude, based upon the record before us, that defense counsel was not reasonably effective because additional circumstances regarding the conduct of Scot's stepfather were not put before the jury. *Pitts v. Glass,* 231 Ga. 638 (203 SE2d 515) (1974).

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 2, 1982.

*Elizabeth C. Calhoun,* for appellant.

*Joseph H. Briley, District Attorney, Michael J. Bowers, Attorney General, Daryl A. Robinson, Assistant Attorney General,* for appellee.