Alphonso MORGAN, Petitioner,

v.

Walter D. ZANT, Respondent.

No. CV 182–055.

United States District Court,
S.D. Georgia,
Augusta Division.

Feb. 8, 1984.

William E. Hoffmann, Jr., Atlanta, Ga., John F.M. Ranitz, Jr., Ranitz, Mahoney, Forbes & Coolidge, P.C., Savannah, Ga., for petitioner.

Michael J. Bowers, Atty. Gen., Nicholas G. Dumich, Asst. Atty. Gen., Atlanta, Ga., for respondent.

## ORDER

BOWEN, District Judge.

The petitioner, Alphonso Morgan, applies to this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254.

The Georgia Supreme Court summarized the evidence and described the petitioner's crime as follows:

On August 22, 1976, at 11:30 p.m., the victim James Gray was driving to his job as night superintendent at the Graniteville Company in South Carolina. When he stopped at an intersection, appellant Morgan, Jose High and Judson Ruffin approached Gray's truck. One of the co-indictees got into the truck with Gray, and, pointing a sawed-off shotgun at him, forced the victim to follow Ruffin's automobile. Somewhere in Georgia, the victim was taken out of his truck and put into the trunk of Ruffin's automobile. The co-indictees then drove their victim to the south end of Bush Field in Richmond County.

Morgan and his companions pulled Gray out of the truck, took ninety dollars from his wallet and told him that they were going to kill him. They took off the victim's shirt and tied it around his head like a blindfold. While Gray was begging for his life, Morgan pulled the sawed-off shotgun to his face and pulled the trigger.

*Morgan v. State*, 241 Ga. 485, 485–86, 246 S.E.2d 198, 198–99 (1978). The petitioner was convicted in the Superior Court of Richmond County for the armed robbery, kidnapping and murder of James Gray. A jury sentenced Morgan to a twenty-year term for kidnapping, a concurrent life sentence for armed robbery, and the death penalty for murder.

The Supreme Court of Georgia affirmed the petitioner's conviction and sentence. *Morgan v. State*, 241 Ga. 485, 246 S.E.2d 198 (1978). The United States Supreme Court subsequently denied Morgan's petition for a writ of certiorari. *Morgan v. Georgia*, 441 U.S. 967, 99 S.Ct. 2418, 60 L.Ed.2d 1073, *reh'g denied*, 444 U.S. 976, 100 S.Ct. 475, 62 L.Ed.2d 393 (1979). Morgan filed a state habeas corpus petition in the Superior Court of Tattnall County. The superior court held a hearing on September 26, 1980, and denied Morgan's habeas corpus petition on March 27, 1981. *Morgan v. Montgomery*, No. 80–118 (Superior Court of Tattnall County March 27, 1981). On June 23, 1981, the Georgia Supreme Court denied Morgan's application for a certificate of probable cause to appeal. *Morgan v. Montgomery*, Application No. 1640 (Ga. June 23, 1981). The United States Supreme Court denied Morgan's second petition for a writ of certiorari and a subsequent petition for rehearing.

The petitioner is before this Court to challenge the constitutionality both of his conviction and of the sentence imposed. The State does not contest the fact that the petitioner has exhausted all of his available state remedies. In accordance with the model form for use in applications for habeas corpus under 28 U.S.C. § 2254, paragraph twelve of his petition contains numerous grounds for possible relief specified by subparagraphs lettered from "A" to "BB." Morgan generally enumerates the following reasons to support his challenge:

1. The jury instructions on mitigating and aggravating circumstances were improper and insufficient. Subparagraphs A, B & C.

2. This counsel provided ineffective assistance. Subparagraphs D, E & F.

3. He was denied due process with regard to his right to appeal. Subparagraphs G & H.

4. The trial judge improperly excluded relevant hearsay evidence concerning mitigating circumstances. Subparagraph I.

5. The statutory aggravating circumstance found by the jury in its recommendation of the death penalty was unconstitutionally vague and overbroad. Subparagraph J.

6. The trial judge failed to instruct the jury that its recommendation of the death sentence was binding upon him. Subparagraph K.

7. The trial judge failed to exclude Morgan's statements as involuntary and the fruit of an unlawful arrest. Subparagraph L.

8. The grand jury and traverse jury compositions were unconstitutional. Subparagraphs M–W.

9. The Georgia death penalty is unconstitutional. Subparagraphs X, Y & Z.

10. Morgan was denied a full and fair hearing on his petition for writ of habeas corpus in the Georgia state courts. Subparagraphs AA & BB.

Morgan also requests an evidentiary hearing for the presentation of facts concerning the allegations listed in subparagraphs E(3)–(8), F, M–W, and Y–BB.[1]

## THE NEED FOR AN EVIDENTIARY HEARING

On June 23, 1983, this Court held a hearing to allow the petitioner's counsel an opportunity to make an offer of proof regarding the need for a full evidentiary hearing. He essentially argued that Morgan failed to receive an adequate hearing on his state habeas corpus petition, because the state judge denied Morgan's motion for state funds to hire an investigator and expert witnesses to present evidence on Morgan's behalf. This argument is also the substance of subparagraphs AA and BB of Morgan's petition for federal habeas corpus.[2]

In *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), the United States Supreme Court described the six circumstances that would mandate an evidentiary hearing on a habeas corpus petition in federal court. The fifth enumerated circumstance is when "the material facts were not adequately developed at the state-court hearing." *Id.* at 313, 83 S.Ct. at 757. The Eleventh Circuit has explained this *Townsend* requirement as follows:

1. The petitioner has summarized the key facts in these subparagraphs as follows:

a) Whether Morgan was denied effective assistance of counsel by the system and practice of appointment of counsel for indigent persons in capital cases in Georgia.

b) Whether the jury was selected through procedures that systematically excluded from jury service all persons having conscientious or religious scruples against capital punishment.

c) Whether the jury did not constitute a representative cross-section of the community.

d) Whether the jury was biased in favor of the prosecution on the issue of Morgan's guilt of the crimes with which he was charged.

e) Whether the prosecutor exercised his preemptory challenges in a racially biased manner which resulted in the exclusion of members of the black race from service on the jury.

f) Whether the District Attorney, over a long period of time, developed a pattern and practice of excluding members of the black race from being allowed to serve on the jury.

g) Whether Morgan was indicted by a grand jury from a grand jury pool from which the following classes of residents were systematically excluded: (a) young adults age 18 to 30; (b) blacks; (c) blacks age 18 to 30; (d) students; (e) military personnel; (f) poor people; and (g) operators of one-person businesses.

h) Whether the classes of individuals set forth in the previous sentence were excluded from the traverse jury pool.

i) Whether the death penalty is administered and applied arbitrarily and capriciously in the State of Georgia.

j) Whether Morgan's death sentence was exacted pursuant to a pattern and practice of Georgia prosecuting authorities and juries to discriminate on grounds of race, sex, and poverty in the administration of capital punishment.

k) Whether petitioner was convicted by a jury in an atmosphere of passion, prejudice or other arbitrary factors.

l) Whether adverse pretrial publicity prejudiced the community of jurors.

Petitioner's Brief at 6–8 (June 16, 1983).

2. In subparagraph AA, Morgan also alleged that he "was denied his right to effective assistance of counsel, right to present witnesses on his behalf, right to confront and cross-examine witnesses, right to a reliable sentence determination, right to meaningful access to the courts, right to due process and equal protection of law as guaranteed by the Sixth, Eighth and Fourteenth Amendments to the United States Constitution." Petition for Writ of Habeas Corpus, ¶ 12AA.

This subparagraph, however, does not expressly state how Morgan was denied these rights. By reading subparagraphs AA and BB together, the Court assumes that Morgan was denied these rights as well as the right to an adequate state habeas corpus hearing, because the state judge refused to grant Morgan's motion requesting funds.

Thus a federal habeas petitioner must make a showing of two elements in order to obtain an evidentiary hearing based on the fifth circumstance of *Townsend:* first, that a fact pertaining to his federal constitutional claim was not adequately developed at the state court hearing and that the fact was "material" (in the language of section (d)(3)) or "crucial to a fair, rounded development of the material facts" (in the language of *Townsend* ); second, that failure to develop that material fact at the state proceeding was not attributable to petitioner's inexcusable neglect or deliberate bypass.

*Thomas v. Zant,* 697 F.2d 977 (11th Cir. 1983).

Without so expressly stating, Morgan apparently contends that this Court must hold an evidentiary hearing in accordance with *Townsend,* because the state judge's refusal to allocate state funds deprived Morgan of the opportunity to adequately develop material facts at the state habeas corpus proceeding. This argument is without merit.

■ In his federal petition, Morgan requests this Court to "[g]rant Petitioner, who is indigent, sufficient funds to secure expert testimony necessary to prove the facts as alleged in his petition." Petition for Writ of Habeas Corpus at 16. This request is similar to the one made by Morgan before the state habeas corpus court. At the hearing on June 23, 1983, I forewarned the petitioner's counsel and have subsequently decided that Morgan will receive no federal funds to hire an expert witness.

If this Court conducted an evidentiary hearing, the petitioner would be in essentially the same financial position before a federal court that he occupied previously before a state court. If he presented any evidence at a federal evidentiary hearing that he did not present at the state level even though both courts denied his similar motions for funds, then I would view the petitioner's failure to present that evidence at the state level as inexcusable neglect or deliberate bypass.[3] *See Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Morgan's request for an evidentiary hearing, therefore, is DENIED.

■ Further, the refusal of the state habeas corpus judge to allocate funds to the petitioner did not infringe on Morgan's constitutional right to a full and fair hearing on his petition in the Georgia courts. The Eleventh Circuit in *Willis v. Zant,* 720 F.2d 1212 (11th Cir.1983), has already considered this point. The petitioner in *Willis* alleged that:

he was denied an opportunity to present evidence at his state and federal habeas corpus proceedings, in violation of the due process clause of the fourteenth amendment, because the State of Georgia failed to provide him financial assistance to obtain the evidence necessary to prove his constitutional claims and failed to transcribe, for his use, several thousand pages of pretrial proceedings.

*Id.* at 1215. The Eleventh Circuit summarily noted that "[p]etitioner had full opportunity to put forth evidence, and the failure of the State to provide financial assistance for habeas proceedings states no constitutional issue." *Id.* at 1215 n. 5. The allega-

---

**3.** At the hearing on July 23, 1983, the petitioner's counsel, in the following dialogue, essentially agreed with this position:

Hoffmann: Quite frankly, I don't think an evidentiary hearing can be put forth that will do the petitioner any good unless those funds are available.

The Court: So you're suggestion here, and I think what we're dealing with, you have made an election, have you not, in the state habeas not to offer any evidence because you didn't have the money?

Hoffmann: That's right, Your Honor.

The Court: And you asked for the money and that is the point of law now as to whether or not you are entitled to funds for the prosecution of such an evidentiary hearing.

Hoffmann: Yes, that aspect is point of law.

The Court: If you are wrong, you have given up your right.

Hoffmann: If I'm not entitled to funds—Let me put it this way. If Judge Harvey correctly ruled that I was not entitled to funds and if this Court in effect affirms that ruling, then yes, those issues will not be presented.

tions specified in subparagraphs AA and BB, therefore, are without merit.

## JURY INSTRUCTIONS ON MITIGATING AND AGGRAVATING CIRCUMSTANCES

After the jury returned a guilty verdict against Morgan, the judge immediately proceeded into the sentencing phase of the trial. While neither side presented additional evidence to show mitigating or aggravating circumstances, both sides did make arguments to the jury concerning the imposition of a sentence. The trial judge then instructed the jury.[4] In his petition at

subparagraphs A, B, and C, Morgan challenges the constitutional adequacy of these instructions in that the trial judge:

1. failed to charge the jury on the nature, function and meaning of "mitigating circumstances" (subparagraph A);

2. failed to charge the jury on the meaning of "aggravating circumstances" in general and on the "§ (b)(7) aggravating circumstance" in particular (subparagraph B); and

3. failed to charge the jury on their option to recommend life imprison-

4. The complete text of the jury instructions that the trial judge delivered during the sentencing phase of Morgan's trial is as follows:

Now, ladies and gentlemen of the jury, you having found the defendant guilty of murder, and armed robbery, and kidnapping, the Court will impose sentence with reference to the armed robbery and kidnapping, but you having found the defendant guilty of the offense of murder, it is now your duty to determine within the limits prescribed by law the penalty that shall be imposed as punishment for that offense. In reaching this determination, you should consider all of the evidence received by you in open court in both phases of the trial. You should consider all of the facts and circumstances of the case, including any mitigating or aggravating circumstances.

Under the laws of this State, every person guilty of the offense of murder shall be punished by death by electrocution, or by life in the penitentiary. In the event that your verdict is life imprisonment, the punishment the defendant would receive would be imprisonment in the penitentiary for and during the remainder of his natural life. If that be your verdict, you would add, following the verdict already found by you, an additional verdict as follows: We fix his punishment as life imprisonment for the offense of murder, to be served concurrently or consecutively with any other sentence, as you may determine. You may, however, if you see fit and if such be your verdict, fix his punishment as death, which would require a sentence by the Court of death by electrocution. If that be your verdict, you would add following the verdict already found by you an additional verdict as follows: We recommend his punishment as death for the offense of murder.

I charge you that before you would be authorized to find a verdict fixing a sentence of death by electrocution for the offense of murder, you must find upon the evidence statutory aggravating circumstance or circumstances sufficient to authorize such penalty.

I charge you that a finding of statutory aggravating circumstance or circumstances shall only be based upon evidence convincing your minds beyond a reasonable doubt—and reasonable doubt has previously been defined in the first phase of the trial—as to the existence of one or more of the following factual conditions, in connection with the defendant's perpetration of the offense for which you found him guilty. With respect to the offense of murder, they are: The offense of murder was committed while the offender was engaged in the commission of another capital felony, armed robbery; or the offense of murder was outrageously or wantonly vile, horrible, or inhuman in that it involved torture, or depravity of mind, or an aggravated battery to the victim. Now, an aggravated battery is when one maliciously causes bodily harm to another by depriving him of a member of his body, or by rendering a member of his body useless, or by seriously disfiguring him, his body, or a member thereof; or that the offender committed the offense of murder for the purpose of receiving money.

The statutory aggravating circumstance or circumstances that you are authorized to consider will be submitted to you in writing for your deliberations. You must designate in writing in your verdict on the indictment the aggravating circumstance or circumstances which you find to have existed with respect to the offense for which you recommend the death penalty.

Your verdict respecting punishment must be agreed to by all twelve of you.

Now, you may retire to begin your deliberations—but don't begin your deliberations until the bailiff brings you the indictment with your verdict of guilty on it, along with the written statutory aggravating circumstances which you may consider.

You may retire.

Trial Transcript at 229–31, *State v. Morgan* (Superior Court of Richmond County July 13–14, 1977).

ment even if they found the existence of statutory aggravating circumstances (Subparagraph C).

This Court recognizes its duty to construe jury instructions as a whole, rather than in a piecemeal fashion, when it determines their constitutional adequacy. The United States Supreme Court has stated that:

> [W]e accept at the outset the well-established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.... While this does not mean that an instruction by itself may never rise to the level of constitutional error, ..., it does recognize that a judgment of conviction is commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge. Thus not only is the challenged instruction but one of many such instructions, but the process of instruction itself is but one of several components of the trial which may result in the judgment of conviction.

*Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973) (citations omitted). Even though the *Naughten* decision considered jury instructions at the conviction phase of an armed robbery trial, the same judicial policy should equally apply to instructions given at the sentencing phase of a murder trial.

■ In regard to Morgan's subparagraph A challenge to the trial judge's jury instructions, the Eleventh Circuit has stated:

> In light of *Lockett, Gregg,* and *Chenault,* we hold that the eighth and fourteenth amendments require that when a jury is charged with the decision whether to impose the death penalty, the jury must receive clear instructions which not only do not preclude consideration of mitigating factors, *Lockett,* but which also "guid[e] and focu[s] the jury's objective consideration of the particularized circumstances of the individual offense and the individual offender ...." *Jurek v. Texas,* 428 U.S. at 274, 96 S.Ct. at 2957. In most cases, this will mean that the judge must clearly and explicitly instruct the jury about mitigating circumstances and the option to recommend against death; in order to do so, the judge will normally tell the jury what a mitigating circumstance is and what its function is in the jury's sentencing deliberations.

*Spivey v. Zant,* 661 F.2d 464, 471 (5th Cir.1981). *See also Westbrook v. Zant,* 704 F.2d 1487, 1503 (11th Cir.1983).

At the sentencing phase of Morgan's trial, the judge instructed the jury that "[i]n reaching this determination [concerning the imposition of penalty], you should consider all of the evidence received by you in open court in both phases of the trial. You should consider all of the facts and circumstances of the case, including any mitigating or aggravating circumstances." Trial Transcript at 229, *State v. Morgan* (Superior Court of Richmond County July 13–14, 1977). The trial judge then elaborated on the two distinct choices of life imprisonment or death that the jury could impose on Morgan for his murder conviction.

These jury instructions fulfill the *Spivey* mandate. Unlike the trial judge in *Spivey,* the Richmond County superior court judge explicitly instructed the jury to consider mitigating circumstances. While the trial judge did not define the meaning of "mitigating," its juxtaposition with the term "aggravating circumstances" and the use of the word "or" ensure that the jury understood its proper meaning.

The important point about these jury instructions is that the trial judge correctly focused the jury's attention on the real issue at the sentencing phase of the trial—whether to recommend life imprisonment or the death penalty for Morgan. Even if the trial judge had never mentioned "mitigating circumstances," the jury's natural thought process would have required that it consider any mitigation that would justify a life imprisonment rather than a sentence of death. In this case, however, the judge specifically directed the jury to con-

sider any mitigating circumstances from all of the facts and circumstances of the case. This part of the jury instructions is not constitutionally deficient.

Morgan's subparagraph B challenge concerns the jury instructions on aggravating circumstances. His petition claims that the trial judge failed to define the term "aggravating circumstances." While the judge did not elaborate on the meaning of this term, he did present a more useful explanation for the jury by listing the appropriate statutory aggravating circumstances that must exist before the jury could return the death penalty. If the trial judge had given a broad definition of "aggravating circumstances," then the jury could have easily confused this broad explanation with the explicit statutory circumstances that required specific consideration. Rather than committing constitutional error, the trial judge furthered the jury's understanding of their exact job by not generally defining "aggravating circumstances."

■ Morgan's petition also contests the constitutional adequacy of the trial judge's instruction concerning the specific statutory aggravating circumstance known as § (b)(7).[5] The jury listed only this aggravating circumstance when it recommended the death penalty. Morgan's counsel cites *Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), to support this challenge.

In *Godfrey*, the Supreme Court reviewed the imposition of the death penalty in a family violence case. A distraught husband killed his wife and mother-in-law shortly after a heated argument between the husband and wife. Both victims died instantly. The state prosecutor admitted in closing arguments to the jury and the trial judge stated in his written report to the Georgia Supreme Court that there was no evidence of torture in the case. At the sentencing phase the jury returned a written statement that only partially quoted the language of § (b)(7).

The *Godfrey* Court placed special emphasis on the partial quotation by stating:

> In the case before us, the Georgia Supreme Court has affirmed a sentence of death based upon no more than a finding that the offense was "outrageously or wantonly vile, horrible and inhuman." There is nothing in these few words, standing alone, that implies any inherent restraint on the arbitrary and capricious infliction of the death sentence. A person of ordinary sensibility could fairly characterize almost every murder as "outrageously or wantonly vile, horrible and inhuman." Such a view may, in fact, have been one to which the members of the jury in this case subscribed. If so, their preconceptions were not dispelled by the trial judge's sentencing instructions. These gave the jury no guidance concerning the meaning of any of § (b)(7)'s terms. In fact, the jury's interpretation of § (b)(7) can only be the subject of sheer speculation.

*Godfrey* at 428–29, 100 S.Ct. at 1764–1765.

This concern by the *Godfrey* court about "the arbitrary and capricious infliction of the death sentence," *id.*, does not apply to Morgan's case. The jury recommended the death penalty for "the offense of murder [that] was outrageously and wantonly vile, horrible or inhuman," because that crime "involved torture, depravity of mind, *and* aggravated battery to the victim." Trial Transcript at 232, *State v. Morgan* (Superior Court of Richmond County July 13–14, 1977) (emphasis added). *See Stanley v. Zant*, 697 F.2d 955, 970–72 (11th Cir.1983).

---

**5.** Section 17–10–30(b)(7) of the Official Code of Georgia Annotated states:

(b) In all cases of other offenses for which the death penalty may be authorized, the judge shall consider, or he shall include in his instructions to the jury for it to consider, any mitigating circumstances or aggravating circumstances otherwise authorized by law and any of the following statutory aggravating circumstances which may be supported by the evidence:

(7) The offense of murder, rape, armed robbery, or kidnapping was outrageously or wantonly vile, horrible, or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim.

Further, the trial judge's jury instructions adequately explained § (b)(7) to "channel the sentencer's discretion by 'clear and objective standards' that provide 'specific and detailed guidance,' and that 'make rationally reviewable the process for imposing a sentence of death.'" *Godfrey* at 428, 100 S.Ct. at 1764. In its summary of *Harris v. State*, 237 Ga. 718, 230 S.E.2d 1 (1976), and *Blake v. State*, 239 Ga. 292, 236 S.E.2d 637 (1977), the *Godfrey* Court reduced the language in § (b)(7) to its essence:

The *Harris* and *Blake* opinions suggest that the Georgia Supreme Court had by 1977 reached three separate but consistent conclusions respecting the § (b)(7) aggravating circumstance. The first was that the evidence that the offense was "outrageously or wantonly vile, horrible or inhuman" had to demonstrate "torture, depravity of mind, or an aggravated battery to the victim." The second was that the phrase, "depravity of mind," comprehended only the kind of mental state that led the murderer to torture or to commit an aggravated battery before killing his victim. The third, derived from *Blake* alone, was that the word, "torture," must be construed *in pari materia* with "aggravated battery" so as to require evidence of serious physical abuse of the victim before death.

*Godfrey* at 431, 100 S.Ct. at 1766 (footnotes omitted). Under this *Godfrey* analysis, the Georgia Supreme Court has essentially eliminated the need for a trial judge to define any § (b)(7) term other than the phrase "aggravated battery." *See Gilreath v. State*, 247 Ga. 814, 836, 279 S.E.2d 650, 670 (1981). Since the superior court judge in Morgan's case did instruct the jury on the statutory definition of "aggravated battery,"[6] these instructions were constitutionally adequate to guide the jury in its decision to recommend the death penalty. *See Westbrook v. Zant*, 704 F.2d 1487, 1504 (11th Cir.1983).

In subparagraph C of his petition, Morgan essentially claims that the trial judge failed to instruct the jury that they had the option to recommend life imprisonment even if statutory aggravating circumstances existed. The Eleventh Circuit has repeatedly emphasized that a trial "judge must clearly and explicitly instruct the jury about mitigating circumstances and the option to recommend against death." *Spivey v. Zant*, 661 F.2d 464, 471 (5th Cir. Unit B 1981). *See also Moore v. Zant*, 722 F.2d 640, 646–647 (11th Cir.1983); *Westbrook v. Zant*, 704 F.2d 1487, 1502–03 (11th Cir. 1983); *Goodwin v. Balkcom*, 684 F.2d 794, 800–03 (11th Cir.1982).

The Eleventh Circuit in *Moore* considered this issue and analyzed the jury instructions in that case in the following manner:

The trial judge first instructed the jury that it "would be authorized to consider imposing a sentence of death" only if it found that a statutory aggravating circumstance existed beyond a reasonable doubt. The trial judge then instructed that if the jury did not find the existence of statutory aggravating circumstances, "the sentence would be imprisonment for life." This instruction clearly expressed the need for a finding of statutory aggravating circumstances to establish eligibility for a capital sentence. The trial court then charged that in determining the appropriate sentence, the jury was "authorized to consider all of the evidence received" in both the trial and the sentencing hearing. This language clearly instructed the jury that it could impose a life sentence even if it found the presence of statutory aggravating circumstances; these factors merely authorized the death penalty in determining

---

**6.** *See* note 4, *supra*.

Section 16–5–24(a) of the Official Code of Georgia Annotated defines "aggravated battery" as follows:

A person commits the offense of aggravated battery when he maliciously causes bodily harm to another by depriving him of a member of his body, by rendering a member of his body useless, or by seriously disfiguring his body or a member thereof.

"what sentence is appropriate in each count."

*Moore,* 722 F.2d 640, at 647 (cites omitted).

This same analysis applies to the jury instructions given in Morgan's case. The Richmond County superior court judge clearly established the jury's two options for imposing a sentence upon Morgan of life imprisonment or death. Before the jury could return the death penalty, the judge instructed that they "must find upon the evidence statutory aggravating circumstance or circumstances sufficient to authorize such penalty." Trial Transcript at 230, *State v. Morgan* (Superior Court of Richmond County July 13–14, 1977). The judge's instructions also contain this mandate to the jury: "In reaching this determination, you should consider all of the evidence received by you in open court in both phases of the trial." *Id.* at 229. In accordance with the *Moore* analysis, the trial judge adequately instructed the jury that they could impose life imprisonment even if they found the existence of aggravating circumstances.

### INEFFECTIVE ASSISTANCE OF COUNSEL

■ The petitioner claims in numerous allegations of his petition that his trial counsel rendered ineffective assistance. In subparagraph D Morgan specifically contends that his trial counsel failed to prepare adequately for the sentencing phase of his case, because the attorney did not offer any mitigating evidence during that phase.[7]

The former Fifth Circuit in *Washington v. Strickland,* 693 F.2d 1243 (5th Cir. Unit B 1982) (en banc), *cert. granted,* —— U.S. ——, 103 S.Ct. 2451, 77 L.Ed.2d 1332 (1983), has already addressed a factually similar challenge. The petitioner in *Washington* contended that his trial counsel was ineffective "because he failed to investi-

gate, procure and present character evidence relevant to the sentencing stage of [petitioner's] trial." *Id.* at 1246. In its formulation of an attorney's duty to prepare, the *Washington* court explained:

The amount of pretrial investigation that is reasonable defies precise measurement. It will necessarily depend upon a variety of factors including the number of issues in the case, the relative complexity of those issues, the strength of the government's case, and the overall strategy of trial counsel. *See, e.g., Washington v. Watkins,* 655 F.2d at 1357; *Wolfs v. Britton,* 509 F.2d 304, 309 (8th Cir.1975). In making that determination, courts should not judge the reasonableness of counsel's efforts from the omniscient perspective of hindsight, but rather "from the perspective of counsel, taking into account all of the circumstances of the case, but only as those circumstances were known to him at the time in question." *Washington v. Watkins,* 655 F.2d at 1356.

*Washington v. Strickland,* at 1251.

The *Washington* court then listed five lines of cases to "identify the proper role that counsel's strategy plays in the evaluation of the reasonableness of pretrial investigation." *Id.* at 1252. Of particular importance to Morgan's challenge is the second scenario where "counsel conducts a reasonably substantial investigation into the one line of defense that is presented at trial." *Id.* at 1253. The former Fifth Circuit stated:

In this class of decisions we again deal with cases in which effective counsel would discern only one plausible line of defense or in which he chooses to rely upon only one major line of defense. An attorney who conducts a reasonably substantial investigation into that line of defense before it is presented at trial is often criticized by his client after the defense proves unsuccessful for not hav-

---

7. In subparagraph E(4), the petitioner vaguely asserts that "[c]ounsel for Morgan failed to interview witnesses and properly investigate the case as related to the issues of guilt and innocence and as related to mitigating circumstanc-

es for the penalty phase of the trial." Petition for Writ of Habeas Corpus, ¶ 12E(4). The Court will consider this allegation and subparagraph D simultaneously.

ing conducted a more extensive investigation. Courts have emphasized that "counsel for a criminal defendant is not required to pursue every path until it bears fruit or until all conceivable hope withers." *Lovett v. Florida,* 627 F.2d 706, 708 (5th Cir.1980). Rather, attorneys must conduct a substantial investigation which includes "an independent examination of the facts, circumstances, pleadings and laws involved." *Rummel v. Estelle,* 590 F.2d at 104; *United States v. Moore,* 554 F.2d 1086, 1092–93 (D.C.Cir.1976).

The question whether counsel conducted a reasonable amount of investigation prior to presenting the one line of defense at trial does not typically involve strategic choices. Once the choice has been made to rely upon one defense at trial, counsel is of course obliged to make a reasonable, though not necessarily exhaustive, investigation before trial.

*Id.*

Morgan's trial counsel testified at the state habeas corpus hearing:

From the very first time I talked to him [Morgan] and discussed the case with him that I think that [mitigating circumstances] was the whole thing I had on my mind that I was trying to explain to him. Not the word mitigating but what he could understand. And what I thought that I could best do for him to serve his purpose. And that was anything that was in mitigation of what happened.

. . . . .

... I knew exactly from the very start of the case what had happened and I knew what the plan of attack [was] that I had to take.

Habeas Corpus Transcript at 112 & 119, *Morgan v. Montgomery* (Superior Court of Tattnall County Sept. 26, 1980). These statements comport with this second line of cases described by *Washington* where counsel pursues one line of defense. Accordingly, to render effective assistance under the duty to prepare and investigate, Morgan's trial counsel had "to make a reasonable, though not necessarily exhaustive, investigation before trial." *Washington* at 1253.

At the state habeas corpus hearing, Morgan's trial counsel appeared as a witness and related his attempts to investigate. At the outset of his representation of Morgan in this case, he attended the preliminary hearing for "one or two of the other defendants" to observe the facts presented. Habeas Corpus Transcript at 120. He talked with his client "about the facts and about Morgan's written statement confessing guilt." *Id.* He interviewed "several police officers in depth about the case," other people "that knew something about it," and even the father of one of the other defendants. *Id.* at 119. He considered the use of a lie detector test. *Id.* His investigation also included preparation to examine at trial an officer of the Georgia Bureau of Investigation concerning certain mitigating circumstances from Morgan's confession statement. *Id.* at 124. While these actions certainly were not exhaustive of all the investigative possibilities, they do represent a reasonable investigation before trial.

This defense rendered by Morgan's trial counsel for the entire case forms the basis for the petitioner's specific references to ineffective assistance during the sentencing phase of the trial. Morgan contends that his trial counsel did not prepare or investigate any evidence for this sentencing phase. His basis for this claim is that his counsel failed to offer any evidence whatsoever during the penalty phase even though mitigating circumstances in the form of character evidence existed.

After a reasonable investigation before trial, Morgan's appointed counsel decided to try "both parts [the verdict and sentencing phases] together because all [he] was trying to do was save [Morgan] from getting the electric chair." Habeas Corpus Transcript at 114. The Court has already determined that this decision was not a breach of trial counsel's duty to investigate. Morgan's trial counsel pursued this course by cross-examining a special agent with the Georgia Bureau of Investigation

during the verdict phase of trial. The agent testified concerning a written statement taken by him and signed by Morgan in which Morgan claimed that a co-defendant coerced him to shoot the victim. Trial Transcript at 202–03.

Morgan's counsel did not present any evidence, including character evidence, at the sentencing phase. He considered and then refused the opportunity to present any mitigating character evidence through the testimony of Morgan or other witnesses. His reason was that "if we brought in any evidence of any type of good character which he had just got out of jail probably six or eight months [or] year previous to the time that this offense happened, Mr. Morgan did, that Mr. Allen [the prosecutor] was going into all these other murders and kidnappings and the individuals involved and I didn't see that that was going to be any benefit, that was just going to cause more tension to what was already a very, very, very serious crime." Habeas Corpus Transcript at 125.

A decision from the Georgia Court of Appeals justifies trial counsel's opinon in that:

> When the defendant elects to put his character in issue the direct examination must relate to his general reputation, not to particular transactions, but on cross examination the state may inquire with particularity to test the witness' basis for the opinion given, and may "inquire if he has not heard particular persons speak ill of him, or if he has not known him to be accused of particular crimes." *Moulder v. State*, 9 Ga.App. 438, 439, 71 S.E. 682.

*Upton v. State*, 128 Ga.App. 547, 551, 197 S.E.2d 478, 481 (1973). Morgan's trial counsel, therefore, did not commit constitutional error in his decision to forego availa-

ble character evidence. *See Easter v. Estelle*, 609 F.2d 756, 759 (5th Cir.1980) (strategic choice not to open the door to prior criminal evidence excuses failure to interview certain witnesses.)

The trial counsel's decision not to present any evidence whatsoever during the sentencing phase is likewise not constitutionally ineffective assistance of counsel. Morgan's trial counsel based his defense on the mitigating testimony of the GBI agent. This agent was the last witness examined at the verdict phase of the trial. Both sides then presented closing arguments, and the judge instructed the jury concerning their decision of innocence or guilt. Immediately after the jury's verdict, the case proceeded into the sentencing phase. Morgan's trial counsel chose not to question again the GBI agent on the exact testimony that the agent had previously given at the verdict phase. Both sides, however, did reargue the case, and Morgan's trial counsel did reiterate the agent's testimony. Trial counsel's decisions at the sentencing phase were strategic determinations that did not reflect constitutional inadequacies. *See Stanley v. Zant*, 697 F.2d 955 (11th Cir.1983).

 In subparagraph E, the petitioner alleges, in part, the following acts of ineffective assistance by his trial counsel: 1) failure to file necessary motions; 2) failure to challenge the composition of the grand and traverse juries; 3) failure to request a change of venue to prevent any prejudicial pretrial publicity; and 4) failure to discuss trial-related decisions with Morgan.[8] While the state habeas corpus court has conducted an evidentiary hearing and already determined the merits of these claims, I am

8. *See* Petition for Writ of Habeas Corpus, ¶ 12E(5), (6), (7) & (8).

> In subparagraph E(3), Morgan claims the following:
>
> Both the trial and appellate courts were aware that Morgan sought new assigned counsel because of counsel's failure to cooperate with Morgan and to inform him fully concerning the case, and assigned trial counsel told the trial court that because of lack of

> cooperation by his client he was unable to put on a defense through the client.
> Petition for Writ of Habeas Corpus, ¶ 12E(3). Regardless of any strain on the relationship between Morgan and his assigned counsel, this attorney did actually represent Morgan at trial. Since I ultimately hold in other parts of this order that this representation was not constitutionally ineffective, there is no merit to the petitioner's subparagraph E(3) claim.

fully aware of the Eleventh Circuit mandate:

> Whether effective assistance has been afforded is a mixed question of law and fact. *Cuyler v. Sullivan,* 446 U.S. 335, 341–42, 100 S.Ct. 1708, 1714–15, 64 L.Ed.2d 333 (1980); *Harris v. Oliver,* 645 F.2d 327, 330, n. 3 (5th Cir.), *cert. denied,* 454 U.S. 1109, 102 S.Ct. 687, 70 L.Ed.2d 650 (1981). Therefore this Court has held that a state court's determination of constitutionally effective assistance is not entitled to a presumption of correctness under 28 U.S.C.A. § 2254(d), and that the federal district court's determination is not protected by the clearly erroneous standard of review on appeal.

9. While the conclusions from the state habeas corpus court do not influence this Court's decision, the following portions from the habeas judge's order serve as a helpful summary of the evidence concerning Morgan's contentions on these four points:

> The Petitioner, in his complaint, also alleges that the trial counsel, Chris Nicholson, was ineffective in that he failed to file the necessary motions on the behalf of the Petitioner prior to his trial. The motions that the Petitioner claims that should have been filed are *Brady v. Maryland* type motions, motions concerning the composition of the grand and traverse jury, and a motion for change of venue due to pre-trial publicity.

> The trial counsel testified at the habeas corpus hearing that he did not file a *Brady* motion because he did not find any evidence of any information that would have been exculpatory to the defendant at that time. He further testified that he did not file a motion on the composition of the grand jury, as the Petitioner's co-defendants did so which was granted by the trial court. The Petitioner, in this case, was automatically re-indicted without any motions being made by the trial counsel. The reasoning of the trial counsel for not filing any motions on the composition of the traverse jury was that in his opinion the traverse jury in Richmond County in previous years had opened up a great deal in permitting minorities and women into the jury box and that such action would have been fruitless.

> The trial attorney also testified that he restrained from filing many motions because he wished to keep the pre-trial publicity concerning his client to a very minimum so as to afford him a fair trial in that community. He testified that he was willing for the Petitioner's co-defendants' counsel to create publicity for themselves, as he considered Jose High and Judson Ruffin to be more cuplable [sic]

*Goodwin v. Balkcom,* 684 F.2d 794, 804 (11th Cir.1982). Of course, the historical or primary facts found by the state courts are entitled to a presumption of correctness in a 28 U.S.C.A. § 2254 proceeding in federal court. *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); *Mason v. Balcom,* 531 F.2d 717, 721–22 (5th Cir.1976).

*King v. Strickland,* 714 F.2d 1481, 1485 (11th Cir.1983). After a complete review of the records from the state proceedings, I determine Morgan's trial counsel plotted a strategy that provided the petitioner with constitutionally effective assistance concerning the four allegations above.[9]

> than his client. The trial attorney further testified that he did not file a motion for change of venue for pre-trial publicity, as he had conducted in the last year extensive research into that type of motion. He had determined that it was very difficult to prove the grounds for such a motion, as the final determination to be made by the court dealt with whether or not the defendant could receive a jury that was not biased or prejudiced against him due to the pre-trial publicity. The amount of pre-trial publicity does not necessarily necessitate the filing of a change of venue. This would be especially true in this case as the trial did not take place until one year after the offense had occurred. Many jurors on voir dire indicated that they either did not remember the case, or remembered very little about the case, and therefore, the court would not have sustained such a motion. These decisions of the trial counsel would be in the nature of trial strategy, and therefore, would not be grounds for a determination of ineffective assistance of counsel. *Pullin v. State, supra; Banks v. Glass, supra.* The court therefore finds that the Petitioner's contentions are without merit and denies the petition on this ground.

> The remaining contention of the Petitioner on the issue of ineffective assistance of counsel of the trial counsel deals with the contention that attorney Chris G. Nicholson did not discuss relevant trial related decisions with the Petitioner, Alphonso Morgan, and failed to provide the Petitioner with the minimum attorney's services necessary in any criminal case. The basic contention of the Petitioner on this issue [is] that the trial counsel did not discuss in length with the Petitioner the pros and cons of the Petitioner testifying on his own behalf.

> The Petitioner, in this case, is a young black male and is of medium intelligence. He testi-

■ Morgan also claims ineffective assistance of counsel at the appellate level, because his court-appointed trial counsel failed to appear for oral arguments before the Georgia Supreme Court and failed to file a brief requested by that court after oral arguments on a crucial issue which eventually divided the court by a four-to-three vote.[10] At the outset, this Court agrees with Morgan's challenge that the failure of counsel to appear for any judicial proceeding or to obey the requests of any judicial body is ineffective assistance. The next step, however, is whether this ineffective assistance prejudiced the client.

In *Washington v. Strickland, supra,* the former Fifth Circuit stated:

> If the district court finds on remand that Washington's right to effective assistance of counsel was violated, it should then separately determine whether Washington suffered prejudice of sufficient magnitude to warrant granting the writ of habeas corpus. We decide that the petitioner has the burden of persuasion to demonstrate that the ineffective assistance created not only "a *possibility* of prejudice, but that [it] worked to his *actual* and substantial disadvantage." *See United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 1596, 71 L.Ed.2d 816 (1982) (emphasis in original). If he successfully satisfies this burden, the writ must be granted unless the state proves that counsel's ineffectiveness was harmless beyond a reasonable doubt.

*See Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *Id.* at 1258.

The trial counsel's ineffective assistance before the Georgia Supreme Court did not work "actual and substantial disadvantage" to Morgan, because this assistance was at the appellate, rather than the trial, level. At trial, counsel has an important duty not to prejudice a legally inexperienced jury against his client. At the appellate level a lawyer presents his arguments and briefs to a panel of judges, well-versed in the law from years of legal experience and training. When counsel fails to exhibit competency at this appellate level, judges have the assistance of effective support staff to research their questions. While the failure by Morgan's counsel to assist his client effectively before the Georgia Supreme Court is unfortunate, it is not unconstitutionally deficient because Morgan suffered no "actual or substantial disadvantage."

■ In subparagraph F, Morgan contends that "the system and practice of appointment of counsel for indigent persons in capital cases in Georgia" denied him effective assistance of counsel, because "[b]y historical practice and by statute in Georgia, appointed counsel in capital cases are underpaid and are given no assistance such as investigators or expert witnesses to enable them to conduct the defense of their clients adequately." Petition for Writ of Habeas Corpus, ¶ 12F.

fied that he looked toward his attorney to advise him and to handle the defense of his case. The Petitioner's trial counsel testified that he discussed with the Petitioner about testifying in his behalf, and also tested the Petitioner by asking several difficult questions himself. In his opinion, he felt that Petitioner would not make a good witness on his own behalf and declined to call him as a witness. The decision of the trial counsel is to be considered as trial strategy as the trial counsel did not wish the Petitioner to go to the witness stand and testify that he did not know the co-defendants in that case even though the Petitioner had made two prior confessions to law enforcement officers admitting his involvement in the crimes with the co-defendants. The Court therefore finds that the Peti-

tioner's contentions are without merit and denies the Petitioner's petition on this ground. *Morgan v. Montgomery,* No. 80–118 at 6–9 (Superior Court of Tattnall County March 25, 1981) (state habeas corpus order).

**10.** *See* Petition for Writ of Habeas Corpus, ¶ 12E(1) & (2).

In subparagraph G of his petition, Morgan alleges the denial of due process with regard to his right to appeal for essentially the same reasons that he alleged ineffective assistance of counsel in subparagraphs E(1) and E(2). For the general reasons stated in my discussion concerning ineffective assistance at the appellate level, there was no denial of Morgan's right to due process when he appealed his conviction and sentence to the Georgia Supreme Court.

The burden of proof is on the petitioner to prove his allegations concerning ineffective assistance. *Swain v. Alabama*, 380 U.S. 202, 226, 85 S.Ct. 824, 839, 13 L.Ed.2d 759 (1965); *Jones v. Estelle*, 632 F.2d 490, 492 (5th Cir.1980). Even though the state habeas corpus court and this Court denied Morgan's request for funds to hire expert witnesses to prove this point, Morgan's counsel did not offer any independent evidence at the state evidentiary hearing, and did not even suggest to this Court that he could offer any evidence, in support of this imaginative claim. The petitioner, therefore, has failed to carry his burden of proof.[11]

## DENIAL OF DUE PROCESS

[12] In subparagraph H of his petition, Morgan claims that he was denied due process "because the arguments of counsel to the jury concerning the penalty to be imposed were not transcribed without notice to or consent of Morgan or his counsel, thus denying Morgan meaningful appellate review of his death sentence." Petition for Writ of Habeas Corpus, ¶ 12H. Georgia law states that "[o]n the trial of all felonies the presiding judge shall have the testimony taken down and, when directed by the judge, the court reporter shall exactly and truly record or take stenographic notes of the testimony and proceedings in the case, *except the argument of counsel.*" O.C. G.A. § 17–8–5 (formerly Ga.Code Ann. § 27–2401) (emphasis added). In *Stephens v. Hopper*, 241 Ga. 596, 247 S.E.2d 92 (1978), however, the Georgia Supreme Court added a judicial gloss:

> [E]ven though not required by statute (Code Ann. ¶ 27–2401), closing arguments of counsel should be taken down in a case in which the state is seeking the death penalty. We are unable, however, to accept the proposition that the failure to transcribe the closing arguments of

counsel requires the death penalty automatically to be set aside.

*Id.* at 600–01, 247 S.E.2d at 95. The supreme court ultimately required some finding of "any harm or prejudice resulting from the failure of the court reporter to transcribe closing arguments." *Id.* at 601, 247 S.E.2d at 96.

This Court likewise determines that the failure to transcribe closing arguments at the sentencing phase is not a *per se* violation of constitutional due process in Morgan's case. At the time of trial on July 13, 1977, counsel for both parties had actual notice, or should have had notice, of the wording of Ga.Code Ann. § 27–2401. The Georgia Supreme Court did not render the *Stephens* decision until July 6, 1978.

Further, the petitioner has the burden of proof to show in some way that this failure to transcribe actually violated his due process rights. *See Swain v. Alabama*, 380 U.S. 202, 226, 85 S.Ct. 824, 839, 13 L.Ed.2d 759 (1965). The state habeas corpus judge stated that "[t]he petitioner, at the habeas corpus hearing, failed to produce any evidence that the district attorney made any objectionable statements to the jury in the sentencing phase." *Morgan v. Montgomery*, No. 81–118 at 11 (Superior Court of Tattnall County March 5, 1981). Since the petitioner has also ignored his claim in this Court, he has failed to carry his burden of proof.

## EXCLUSION OF HEARSAY EVIDENCE

[13] The trial judge refused to allow Morgan's counsel to cross-examine a witness concerning a written statement that was not composed in this witness' presence. Trial Transcript at 138–39. Morgan claims constitutional error "because the trial court refused to admit relevant hearsay evidence, which evidence is admissible concerning mitigating circumstances." Petition for Writ

---

11. Even if the petitioner had offered evidence to carry his burden of proof, the Court notes in partial response to this claim that "[u]nder Georgia law, the appointment of an expert in a case such as this one ordinarily lies within the discretion of the trial court. *See Whittaker v.*

*State*, 246 Ga. 163, 269 S.E.2d 436 (1980); *Patterson v. State*, 239 Ga. 409, 238 S.E.2d 2 (1977)." *Moore v. Zant*, 722 F.2d 640, at 648 (11th Cir.1983). The record does not indicate that Morgan's trial counsel even asked the trial court for the assistance of an expert witness.

of Habeas Corpus, ¶ 12(I). This claim has no merit because the trial judge eventually let Morgan's counsel present, for purposes of cross-examination, the witness in whose presence the mitigating statement was actually composed. Trial Transcript at 196–213. Whatever error, if any, that may have occurred was harmless error.

## OVERLY BROAD STATUTORY AGGRAVATING CIRCUMSTANCE

■ In subparagraph J of Morgan's petition, he claims that "the statutory 'aggravating circumstance' found by the jury recommending the death penalty, as set forth at Ga.Code Ann. § 27–2534.1(b)(7) is unconstitutionally over-broad and vague." This claim is meritless because the United States Supreme Court has already reviewed, upheld and construed § (b)(7) to Georgia death penalty cases. *See Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980); *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). The § (b)(7) aggravating circumstance is not *per se* unconstitutional.

Without so directly stating, the petitioner in his subparagraph J claim probably alleges further that § (b)(7) is unconstitutional as applied to his particular case. On this point the Eleventh Circuit has advised:

> Analyzing the sentencing review procedures set forth in Ga.Code Ann. § 17–30–35(c)(2), the *Godfrey* plurality intimated that the uncontrolled discretion of an uninstructed jury could be cured by review in the Georgia Supreme Court. Under section 17–10–35(c)(2), the Georgia Supreme Court may not affirm a judgment of death until it has independently assessed the evidence of record and determined that such evidence supports the jury's finding of an aggravating circumstance.

*Westbrook v. Zant*, 704 F.2d 1487, 1504 (11th Cir.1983). After a full review of the record in Morgan's case, I determine that the evidence produced at trial supports the Georgia Supreme Court's conclusions concerning the § (b)(7) aggravating circumstance. The application of § (b)(7) in Morgan's case was not impermissibly vague or overbroad.

## FAILURE TO INSTRUCT THAT JURY'S RECOMMENDATION WAS BINDING ON JUDGE

■ Morgan alleges a constitutional violation because "the jury was not instructed that its recommendation of the death sentence was binding upon the trial judge." Petition for Writ of Habeas Corpus, ¶ 12K. The petitioner's counsel has not cited nor has this Court found any state or federal case that would support this novel theory. Assuming arguendo, however, that a trial judge has a constitutional duty to so instruct the jury, I determine that the trial judge in Morgan's case complied with that duty. The judge explicitly informed the jury that "[y]ou may, however, if you see fit and if such be your verdict, fix his punishment as death, which would *require* a sentence by the Court of death by electrocution." Trial Transcript at 230. Morgan's argument on this ground fails to furnish a basis for habeas corpus relief.

## ARREST AND STATEMENT

At trial, the judge allowed the introduction into evidence of Morgan's confession taken shortly after Morgan's arrest. The petitioner in subparagraph L challenges this action as constitutional error, because the trial judge allegedly should have excluded the confession either as the fruit of an unlawful arrest or for involuntariness.

■ On the first ground, Morgan claims that the confession was the fruit of a warrantless arrest in violation of the Fourth Amendment, because there was no probable cause for the arrest and even if probable cause existed, the police had ample time to secure a warrant. The United States Supreme Court has stated:

> [W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

*Stone v. Powell*, 428 U.S. 465, 494, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067 (1976). In Morgan's case, the trial judge and the

Georgia Supreme Court on direct appeal considered, in detail, the petitioner's fourth amendment claim.[12] This ground for habeas corpus relief is without merit.

■ Secondly, Morgan contends that his confession was involuntary and that he did not receive a full and fair *Jackson v. Denno* hearing. In *Procunier v. Atchley,* 400 U.S. 446, 91 S.Ct. 485, 27 L.Ed.2d 524 (1970), the Supreme Court established that a habeas corpus petitioner must show not only that the hearing procedures were inadequate but also that his version of the facts, if true, would require a finding of involuntariness. During the *Jackson v. Denno* hearing in Morgan's case, Investigator Dykes, one of the principal arresting officers and one of Morgan's main interrogators, testified that Morgan received the *Miranda* warning numerous times and willingly confessed to the shooting of James Gray.

The petitioner claims that this allegedly brief hearing did not disclose his factual version of involuntariness in that the police had deceived Morgan by stating that his fingerprints were on the murder weapon and that his footprints were found at the crime scene. While there is testimony in the record to support Morgan's version of the facts, *see* Trial Transcript at 128, such deception does not require a finding of involuntariness or coercion. Since I determine that the petitioner fails to meet the second prong of the *Procunier v. Atchley* doctrine, there is no need to consider whether the *Jackson v. Denno* hearing was inadequate. Morgan's second contention is also meritless.

## COMPOSITION OF GRAND AND TRAVERSE JURIES

[18] In subparagraphs M through W, Morgan makes various constitutional chal-

12. The following portion from the Georgia Supreme Court's opinion concerning Morgan's direct appeal provides a good summary of the evidence presented at the *Jackson v. Denno* hearing on Morgan's fourth amendment claim:

> In his first enumeration of error, appellant complains that the trial court erred in failing to have a hearing on a motion to suppress the oral confession of appellant, and in allowing the confession to be admitted into evidence.
>
> The trial transcript shows that a *Jackson v. Denno* hearing was held to determine the admissibility of appellant's confession. The state called the arresting officer who testified that appellant was given the Miranda warnings at the time of arrest. Before any more testimony was heard, the jury was excused and the judge heard evidence on the voluntariness of statements made by appellant to the arresting officer. Also considered at that time was the legality of appellant's arrest. At the close of the hearing the judge ruled to allow introduction of the confession. This constituted a ruling that appellant's arrest was legal as well as a decision that the confession was freely and voluntarily given.
>
> Appellant contends that his warrantless arrest was illegal because there was no probable cause to support it, and that his subsequent confession should have been excluded from the jury's consideration on the basis that it was the product of an illegal arrest. See *Brown v. Illinois,* 422 U.S. 590 [99 S.Ct. 2254, 45 L.Ed.2d 416] (1975); *Wong Sun v. United States,* 371 U.S. 471 [83 S.Ct. 407, 9 L.Ed.2d 441] (1963).
>
> At the time of appellant's arrest, police authorities were involved in the investigation of a number of homicides, rapes, kidnappings and robberies in which the modus operandi was similar. The victims were placed in the trunk of a car and taken to an isolated area; the victims were blindfolded and a shotgun was used to threaten or kill the victims.
>
> Jose High was arrested on Friday evening, August 27, 1976, in connection with the investigation. He confessed to numerous crimes, including the murder of James Gray. High expressly named appellant as being responsible for Gray's murder. This information was learned in the early morning hours of August 28, 1976. Police officers, fearing that appellant might flee if he learned of High's arrest, immediately went to appellant's address as furnished to them by High, and placed appellant under arrest.
>
> In view of the circumstances, we believe that appellant's arrest falls within the purview of Code Ann. § 27–207 which authorizes a warrantless arrest of one where it appears that there is likely to be a failure of justice for want of an officer to issue a warrant. There appears to be no question that the police, at the time of arrest, had probable cause to arrest appellant. As the result of High's confession, which incriminating statements were consistent with information the officers had gained from independent investigation, the officers had reasonably trustworthy information to conclude that appellant was involved in the murder of James Gray.

*Morgan v. State,* 241 Ga. 485, 486–87, 246 S.E.2d 198, 199 (1978).

lenges to the composition of his grand and traverse juries. The Eleventh Circuit in *Smith v. Kemp*, 715 F.2d 1459 (11th Cir. 1983), summarizes the law on this point:

> The law is clear that even if a jury is unconstitutional, that alone will not invalidate a conviction and death sentence if the defendant failed to make the proper constitutional challenge. *Davis v. United States*, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973); *Huffman v. Wainwright*, 651 F.2d 347, 349 (5th Cir. Unit B 1981); *Evans v. Maggio*, 557 F.2d 430, 432–33 (5th Cir.1977); *Marlin v. Florida*, 489 F.2d 702 (5th Cir.1974). A failure to comply with state procedural requirements can be a waiver of the right to assert a constitutional violation. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 51 L.Ed.2d 594 (1977). A state may restrict the time during which a defendant may raise a constitutional violation. *Parker v. North Carolina*, 397 U.S. 790, 798–99, 90 S.Ct. 1458, 1462–63, 25 L.Ed.2d 785 (1970). A federal court will honor a valid state procedural rule that a defendant's failure to object to a grand or petit jury before or during trial constitutes waiver of that objection as a basis for habeas corpus relief. *Francis v. Henderson*, 425 U.S. 536, 541–42, 96 S.Ct. 1708, 1711, 48 L.Ed.2d 149 (1976).

*Id.* at 1469–70.

█ The record is clear, and the parties do not disagree, that Morgan raised no challenge to the composition of either his grand or traverse juries under applicable state law. *See* O.C.G.A. § 15–12–162. Under these circumstances, the "Supreme Court has held that for a federal court to consider the merits of a defendant's claim, where the defendant has failed to comply with a state contemporaneous objection rule, the defendant must show 'cause' for noncompliance with the rule and 'actual prejudice.' *Smith v. Kemp* at 1470 (citing *United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d

149 (1976)). Since the petitioner has not attempted to offer any evidence in this respect, these challenges do not form a basis for habeas corpus relief.

### CONSTITUTIONALITY OF DEATH PENALTY

█ Morgan's last claim in subparagraphs X through Z essentially challenges the arbitrary and capricious application of the Georgia death penalty. The petitioner has not attempted to offer any evidence in support of his challenge. I determine that this claim is a "mere conclusory allegation." *Smith v. Balkcom*, 660 F.2d 573, 585 (5th Cir. Unit B 1981), *modified*, 671 F.2d 858 (5th Cir. Unit B 1982); *Spinkellink v. Wainwright*, 578 F.2d 582, 614 n. 40 (5th Cir.1978).

### CONCLUSION

For the above-stated reasons, the petitioner's allegations of constitutional deprivations are without merit. This Court hereby DENIES the relief sought by Morgan, DISMISSES the petition for a writ of habeas corpus, and DISSOLVES the stay of execution.

